On March 27, 1924, by authentic act of sale executed before Paul G. Borron, Notary Public, in and for the Parish of Iberville, Anatole Hebert appears to have sold to Mrs. Marie Eugenie Hebert, wife of Lawrence Lotz, a lot of ground in the Village of Turnerville, Parish of Iberville, measuring 60 feet front by 120 feet in depth. Mrs. Lotz is the sister of the vendor Anatole Hebert.
Although it is recited in the act of sale that the purchaser, Mrs. Lotz, is "herein investing her own separate and paraphernal funds, the administration of which she *Page 464 
has reserved" and that she is purchasing for herself, her heirs and assigns, it nevertheless appears that of the consideration, which is stated to be $4250, no cash whatever was paid and the entire purchase price was represented by eight promissory notes, one for the sum of $750, payable eight years after date, and seven for $500 each, payable in one, two, three, four, five, six and seven years after date, with interest at six per cent per annum.
On January 31, 1928, Mrs. Lotz, who was then a widow, her husband having died on June 30, 1924, mortgaged the property which she had acquired from her brother, to the Citizens Bank 
Trust Company, through its President, H.J. Levy, to secure a loan of $3000 represented by a note for that amount and made payable in monthly installments of $100 each, beginning February 29, 1928. In the meantime, the first note of $500 which she had given in part payment of the property when she bought it from her brother was paid on March 27, 1925, and the second, being one of the notes of $750, was paid on March 27, 1926. These notes were duly cancelled in the Office of the Recorder of Mortgages. It became necessary for the Citizens Bank Trust Company to foreclose on the mortgage note of $3000 which it held and in the foreclosure proceedings the bank acquired the property which it then sold to Eugenie Lotz, a daughter of Mrs. Lawrence Lotz, on terms of credit with reservation of the vendor's lien and mortgage. This last mortgage also had to be foreclosed on. The property continued to be occupied by Mrs. Lotz and on her failure to pay what the bank claimed as rent due by her, eviction proceedings were instituted against her. For lack of having complied with some of the requisites of the law in giving notice, these proceedings were dismissed but later on they were re-instituted. All the formalities having been now properly followed, judgment of eviction was rendered.
In the meantime the Citizens Bank Trust Company sold the property to the Ober Corporation, which intervened in the last proceeding and upon its failure to be able to have service of citation made on Mrs. Lotz, obtained an order of court appointing a curator to represent her and against whom the proceedings were carried on. Judgment was rendered against the curator and on a writ of execution issued thereunder, all the contents of the house were ordered removed.
These various proceedings no longer present any issue in the case, but they are referred to because they more or less lead up to the real issue that is involved in this suit, in which two of the children of Mrs. Lotz, claiming that the property was purchased during the community existing between their father and mother, it was community property and they have therefore acquired an interest each in their father's half of it, and are asking to be decreed the owners of their undivided interest, respectively.
When the suit was originally instituted these two children were minors and appeared through their mother who had not yet qualified as tutrix. An exception to her want of capacity to stand the judgment having been sustained, she had herself recognized and appointed as their natural tutrix in the Civil District Court of Parish of Orleans, she being then a resident of the City of New Orleans. In the meantime they both having attained the age of eighteen years and over, were duly emancipated and are now appearing in their individual capacities. They each claim to be the owner of an undivided one sixth of the property, each having acquired one third of the undivided interest of their father. The other one sixth apparently is owned by the other child, Eugenie Lotz, who had acquired the property from the Bank, the adjudicatee in the foreclosure proceeding already referred to.
In their petition the plaintiffs set out in detail all the matters referred to and allege that they were not parties to any of the proceedings mentioned. They further allege that prior to May, 1935, when the eviction proceedings were conducted contradictorily with a curator ad hoc appointed to represent their mother, the latter had left the property and was living in New Orleans. That she had moved all her belongings and that whatever was left in the house belonged to them and they continued to reside therein. They further aver that, purporting to act under the writ of execution issued under the judgment in that proceeding, the Sheriff, by threats, force and violence, removed all of their household furnishings and belongings and placed them in the street, where they were exposed to the weather and by further threats and intimidation, attempted to and did violently eject them from the house. That they later returned and managed to continue to reside on the balcony or gallery but later one Conway Joseph Lorio, acting *Page 465 
on instructions from the Citizens Bank Trust Company and the Ober Corporation, came upon the premises and claiming to be the lessee, forcibly evicted them without any writ or legal authority whatever. For all of these unlawful acts which they allege, they aver that they have been damaged in the sum of $3000, $1000 being the damage to their household goods, and $2000, damage to their health and for embarrassment and humiliation.
In the prayer of their petition they ask first for a rule nisi for an injunction against the Citizens Bank Trust Company, the Sheriff of the Parish of Iberville, the Ober Corporation and Conway Joseph Lorio, under which they seek to enjoin and restrain them from continuing in their unlawful acts and then that they have judgment in damages for the sum of $3000 against them all in solido. They then pray for a judgment in their favor and against all the defendants decreeing each to be the owner of an undivided one sixth of the property.
All the defendants appeared in answer to the citations served upon them and filed motions to elect, exceptions of no right or cause of action and an answer in which they put at issue all the various matters set out in the petitions of the plaintiff, claiming that the property was the separate and paraphernal property of their mother and that all of the proceedings had under the mortgage granted in favor of the Citizens Bank Trust Company were legal and valid. All allegations with reference to the damages which the plaintiffs alleged they had suffered were denied and then the Ober Corporation, assuming the position of a plaintiff in reconvention, alleged that by reason of the plaintiffs' refusal to vacate the premises, it lost two months rent at $20 per month, and further, because of their efforts to intimidate prospective tenants, the rental value of the property was reduced, causing a loss in the sum of $750. That defendant then asked for judgment in reconvention against the plaintiffs in the sum of $790.
The motion to elect was sustained and plaintiffs then chose to stand on their allegations relating to ownership and waived their claim for any injunctive relief. They then filed supplemental pleadings in an effort, apparently, to support their alleged possession against that of the defendants.
After the case had been opened and the plaintiffs sought to introduce testimony to prove the damages they claimed and also testimony relating to their possession of the property, the court sustained an objection to such proof. The objection seems to have been in the nature of another motion to elect on which cause of action plaintiffs were relying and they having, already chosen to rely on their petitory action, all subsequent testimony was confined to the question of the title and ownership of the property and apparently the case has resolved itself purely and simply into a petitory action.
After hearing what testimony was offered, the district court ruled in favor of the plaintiff's decreeing the property to be community property and that as such the plaintiffs acquired an undivided one sixth interest therein by inheritance upon the death of their father, Lawrence Lotz. From that judgment this appeal is being prosecuted.
The only proof adduced, besides the documentary evidence, consists of the testimony of Mrs. Lotz and that of Mr. W.P. Obier, one of the attorneys representing the defendants.
We begin our consideration of the case with the legal proposition in mind that all property purchased during the marriage, regardless of which of the names of the spouses it is placed in, is community property. R.C.C. Article 2402. That article provides that the community consists, among other things, "of the estate which they [husband and wife] may acquire during the marriage, either by donation made jointly to them both, or by purchase, or in any other similar way, even although the purchase be only in the name of one of the two and not of both, because in that case the period of time when the purchase is made is alone attended to, and not the person who made the purchase." The law, therefore, is not concerned with the name of which of the spouses the title to the property is placed in, but with the date or the period of time when the purchase is made for the reason that if it is made after the marriage, it shall, under Article 2399, R.C.C., if there be no stipulation to the contrary, become community property by the mere fact of its acquisition, and by effect of the law.
In commenting and passing upon the legal principles involved under Article 2402, the jurisprudence, from an early date, interpreted its provisions to mean that there is created a presumption that the *Page 466 
property belongs to the community, when purchased during marriage, no matter whether the title thereto is taken in the name of one or the other of the two spouses or of both, and that presumption remains until it is rebutted by proper and sufficient proof. The burden rests upon the one claiming that the property is the separate property of either of the spouses to show that it was acquired and paid for with separate and paraphernal funds and in commenting on the character of proof that is required, the court has used, among others, such absolute terms as "affirmative", "strict", "certain", or "positive", indicating how convincing it should be. Pope v. Foster, 24 La.Ann. 521; Ford v. Ford, 1 La. 201; Houghton v. Hall, 177 La. 237, 148 So. 37.
In the case of Fortier v. Barry, 111 La. 776, 35 So. 900, a wife, in an effort to resist a judgment creditor of her husband who had levied on a certain property bought on terms of credit in her name during the marriage, claimed that it was her separate estate, having been bought with her paraphernal funds, as recited in the deed. In holding her to the burden of setting aside the presumption that it was community property, the court stated that she had to establish by proof outside the recitals of the act of sale (1) the possession of some paraphernal funds under her administration and available for investment, (2) that the cash portion of the purchase price bore such a relation to the whole as to make the property purchased sufficient security for the credit portion, and (3) that her paraphernal property and revenues were such as to enable her to make the purchase with reasonable expectation of meeting the deferred payments. This case has particular bearing on the present case in which no cash whatever was given on the purchase price and thus, it would seem, a still greater burden is placed on those so claiming, to prove that it was the wife's separate property.
Pursuing this question further, we come to the case of Whittington v. Heirs of Pegues, 165 La. 151, 115 So. 441, 442, in which the Court quotes with approval from the case of Succession of Andrus, 34 La.Ann. 1063, to the effect that a purchase made exclusively on credit by a married woman not shown to have been separate in property from her husband or to have retained the administration of separate property yielding revenue, will be held to be a purchase by the community for which the wife was prohibited from binding herself or her property. "Such a purchase by a married woman," adds the Court, "when authorized by her husband, is a purchase made for the benefit of the community" and, it is stated further, "nor does it matter in such case that the obligation of the community for the purchase price was ultimately discharged out of the separate estate of the wife. Such subsequent event cannot change the status of the property (as community property) impressed upon it at the time of its acquisition. It gives rise only to a claim for reimbursement on the part of the wife against the husband. Cf. R.C.C. arts. 2390, 3319, subd. 3, 3285."
It is important that we keep this last statement of what the law is in mind, in view of one of the contentions made on behalf of the defendants herein, as will appear later on.
Mrs. Lotz's testimony is, that notwithstanding the recital made by her in the deed that the property was acquired with her separate and paraphernal funds, it was purchased by herself and her husband and in substantiation of this she has produced a check in the sum of $1200 signed by her husband, which she says represented the purchase price. The fact that the deed contained the recital of the purchase of the property with separate and paraphernal funds makes but little difference of course, as all the decisions are to the effect that notwithstanding such a recital the presumption that the property is community property still exists and can only be overcome by proof of the nature already described. There is something suspicious about the check which was introduced in evidence and placed in the record after the case had been closed, as for instance it having been given months in advance of the sale, and it being for an amount that is different from the amount recited in the deed as being the purchase price. Mention also might be made of the receipt written on its back which undoubtedly was placed there by someone other than the payee of the check. Notwithstanding these suspicious circumstances, the fact remains, as far as the record now discloses, that the check was given by Mrs. Lotz's husband to Anatole Hebert from whom the property was purchased and the testimony of Mrs. Lotz remains uncontradicted that it was given in payment of the naked lot and that the sale itself was not *Page 467 
passed until the improvements had been constructed on it and they were ready to occupy it.
Against Mrs. Lotz's testimony we have only that of Mr. W.P. Obier, who, as he states, reluctantly took the witness stand and did so because he was the only witness who knew the facts relating to the giving of the mortgage by Mrs. Lotz to the Bank. Mr. Obier states that he was consulted by the bank to investigate the title and advise whether the loan should be made or not, and that in his investigation, after having satisfied himself from the recital in the deed that property appeared to be her separate property, he contacted Mrs. Lotz herself with the view of ascertaining from her the source of the purchase fund. After she had stated to him that it was money coming to her from her father's estate, and in which there was to be an adjustment between herself and her brother, he became satisfied and advised the bank to make the loan and take the mortgage. Mr. Obier strenuously contends that Mrs. Lotz has been shown to be a witness who should not be believed because of some shady transactions in which she has been involved before the courts and that his testimony should be accepted over hers when she now contends that she never told him anything like that and insists that the property is community property. We are perfectly willing to accept Mr. Obier's statement at its full value and still cannot understand how, standing alone, it can be accepted as the kind of proof that is required to rebut the presumption that the property is community property in view of the fact that the claimants who are prosecuting this suit are the forced heirs of their father who are not bound by any statements which may have been made by their mother, nor even by the recital made in the deed to the effect that she was purchasing the property with her own separate and paraphernal funds. "Could such declarations be conclusive against the heirs of either spouse, it would be an easy matter to change the rights of succession and the character of separate and community property." Kerwin v. Hibernia Insurance Co., 28 La.Ann. 312.
As a further element of proof that the property is the separate property of Mrs. Lotz, counsel for defendants refer to the fact that the first vendor's lien note was paid and cancelled almost a year after the death of Mr. Lotz and the second of these notes two years thereafter, and both at a time, therefore, when the community had been dissolved by the death of the husband. Granting that these payments had been made with the separate funds of the wife, that, as we have seen under the decision in the case of Whittington v. Heirs of Pegues, supra, would not have had the effect of changing the status of the property (as community property) fixed upon it at the time it was purchased. The only right which would have accrued to the wife in that case would have been a claim for reimbursement of the amount paid, against her husband or his estate. Such being the law as laid down in the case cited and the fact now being that Mrs. Lotz insists that the property was paid for out of community funds, further discussion of this point would seem altogether unnecessary.
For the reasons stated it is ordered that the judgment appealed from be and it is hereby affirmed at the costs of the defendants, appellants herein.