ELLIS, Judge.
In this proceeding for a declaratory judgment the plaintiff-appellant, Fairfax Foster Bailey, seeks to have the half interest acquired from appellant’s father on August 31, 1944, in all of the properties particularly described in Exhibit “1” of the judgment of the court below in St. Mary Parish and’ the three-eighths (3/8ths) mineral interest reserved to appellant under the act of sale by her and her father to Alice C. Plantation & Refinery Inc. on March 31, 1947, as< amended on May 19, 1947, in all of the immovable property particularly described in Exhibit “2” of the judgment of the court below recognized as the separate and para-phernal property of appellant, forming no' part of the community formerly existing between her late husband, James J. Bailey,, and herself. The suit below was brought individually by appellant and in her capacity as executrix of the estate of her late-husband. Defendants are the minor children of the marriage, represented by an attorney at law appointed by the court, and[1] the Alice C. Plantation and Refinery Inc. (hereinafter designated Alice C.), a purchaser of the bulk of the immovable property in dispute.
After trial the Lower Court rendered' judgment declaring that the property de~ *337 scribed in Exhibit “1” attached to said judgment and made part thereof is owned by the community of acquets and gains formerly existing between Fairfax Foster Bailey and James J. Bailey. It was further decreed that there be judgment in favor of Alice C. Plantation & Refinery Inc. and against Fairfax Foster Bailey, individually and as executrix of the Succession of James J. Bailey and against the minor children of said Fairfax Foster Bailey and James J. Bailey, namely, James J. Bailey, III, Prescott Foster Bailey, and Virginia Palfrey Bailey declaring that Alice C. Plantation & Refinery Inc. acquired a good and valid title to the property described in Exhibit “2” attached thereto and made part thereof, and further maintaining the ten year acquisitive prescription pleaded by Alice C. Plantation & Refinery Inc.
To this judgment plaintiff-appellant has appealed and prays that it be reversed and judgment should be rendered in her favor individually and against the succession and her minor children decreeing that the half interest acquired from appellant’s father on August 31, 1944, in all of the properties particularly described in Exhibit “1” of the judgment of the Court below and the three-eighths (3/8ths) mineral interest reserved to appellant under the act of sale by her and her father to Alice C. Plantation & Refinery Inc. on March 31, 1947, as amended on May 19, 1947, in all of the immovable properties particularly described in Exhibit “2” of the judgment of the court below be recognized as the separate and paraphernal property of appellant.
The salient facts are undisputed and well stated in appellant’s brief as follows:
“On August 31, 1944, appellant’s father, the late W. Prescott Foster, sold to appellant, then married and living with her husband, James J. Bailey, Jr., an undivided one-half interest in a number of immovable properties for $150,000.-00, entirely on credit. To secure the purchase price, appellant granted a mortgage on all of the property purchased, represented by six mortgage notes, each for the sum of $25,000.00— the first maturing one year after date and the other maturing in successive years thereafter. This act of sale recites that appellant purchased the property with her separate and paraphernal funds, under her separate control and management, and for her separate estate. Appellant’s late husband intervened in the act of sale and acknowledged that appellant was purchasing the property with her paraphernal funds, under her separate control and management, and that the property purchased and all proceeds therefrom were to be the separate property of appellant, and formed no part of the community estate.
“On March 31, 1947, appellant and her father, the late W. Prescott Foster, sold to Alice C. a large number of immovable properties, and one-fourth of the minerals thereunder; and on May 19, 1947, all of the parties to this act of sale executed an instrument of correction thereof. These two instruments conveyed to Alice C. appellant’s half interest in most of the lands in which she had acquired a half interest from her father, Mr. Foster * * * less the mineral rights reserved as mentioned above. Appellant’s late husband intervened in both of these instruments and acknowledged that the property which appellant was selling was her separate property, acquired with her parapher-nal funds under her separate control and management, and that this property had never entered the community existing between himself and appellant.”
It is freely admitted that appellant’s share of the revenues from Alice C. fell into the community existing between her and her husband because appellant did not execute and file the declaration of para-phernality as required by Article 2386, LSA-Civil Code as amended by La.Acts *338 1944, No. 286, S. 1. Matthews v. Hansberry, 71 So.2d 232 (La.App.1954).
One of the mortgage notes was paid in 1946 and the second in 1952. Both payments were made by bookkeeping entries, setting off the notes against amounts due the community from Mr. Foster arising out of the operation of the Alice C.
The attorney appointed to represent the minor children of appellant contend in the trial court that the undivided one-half interest acquired by appellant and not sold to Alice C. is community property and that Alice C. never acquired a valid title to the half interest in the immovable properties sold by appellant as her separate property. The second of these two contentions has been abandoned and is not before this court. The trial judge was correct in his holding that Alice C. acquired a good and valid title as a result of the conveyance of March 31, 1947, corrected by authentic act on May 19, 1947, whether or not the property conveyed was separate property.[1]
In order for one to sustain a claim that property purchased during the existence of the community is separate property, positive affirmative proof is required. (Pope v. Foster, 24 La.Ann. 521; Ford v. Ford, 1 La. 201; Houghton v. Hall, 177 La. 237, 148 So. 37; Lotz v. Citizens Bank & Trust Co., La.App., 17 So.2d 463, 466). In the leading case on the subject of para-phernal acquisition of property purchased on credit in the name of the wife, (Fortier v. Barry, 111 La. 776, 35 So. 900), Chief Justice Monroe, speaking for a unanimous court, said:
“The presumption of law is that property purchased during the existence of the community, whether in the name of the one or the other of the spouses, belongs to the community, and, where the wife claims it as separate estate, the burden rests on her to establish, by proof dehors the recitals of the act by which it has been acquired, (1) the possession of some paraphernal funds under her administration, and available for investment, (2) that the cash portion of the price bears such a relation to the whole as to make the property purchased sufficient security for the credit portion, and (3) that her para-phernal property and revenues are such as to enable her to make the purchase with reasonable expectation of meeting the deferred payments.”
We believe the appellant has successfully met the burden of establishing that the property was separate property at the time of purchase by positive, affirmative evidence.
Appellant has paraphernal funds under her administration and available for investment as of August 31, 1944. Mr. Mc-Annely, who kept the financial records of Alice C. from its formation in 1947 to date, of Mr. Prescott Foster from 1923 until his death in 1947, and of appellant’s personal account from 1942 to date, testified appellant had received $4,467.03 in rent from Calumet Plantation, and a dividend from Wax Bayou Company of $730.50, both in 1942. In 1943 appellant realized $8,376.00 from the sale of land to the Police Jury, $2,500.00 cash down payment in the sale of Calumet Plantation; mortgage notes convertible into cash totaling $29,500.-00, and an additional $3,000.00 donated to her by her parents.[2]
*339 The second requirement of Fortier v. Barry (supra), that the cash portion of the price bear such relation to the whole as to make the property purchased sufficient security for the credit portion, has been • extended to require, in a case where property is purchased in the name of the wife entirely on credit, a showing that the property is sufficient security for itself. Lotz v. Citizens Bank and Trust Co., La.App., 17 So.2d 463. This most onerous requirement has been satisfied, as is disclosed by an examination of the evidence.
Appellant’s share of the earnings from the property in 1945 and 1946 were $41,-000.00 and $46,000.00, respectively. Two and one-half years after the purchase by appellant, the bulk of the property was sold to Alice C. for stock, appellant’s share being valued at $162,600.00. It must be remembered that there was reserved from this sale, one-fourth of the minerals under the land. In addition, appellant did not assume any of the existing mortgages on the property, thereby causing her undivided one-half interest to become more valuable as the mortgages were paid by her father.
The appellant reasonably expected to be able to meet the deferred payments out of the earnings of the plantation. Not only were the earnings from the plantation sufficient to discharge the annual notes, but the appellant was not required by her father to meet the obligations promptly, but rather was privileged to pay the notes as she found it convenient.
Therefore, appellant has met all of the requirements of the law to establish that the property purchased was acquired as her separate and paraphernal property. This brings us to a consideration of whether or not the use of funds belonging to the community to pay a portion of the deferred purchase price resulted in a transformation of the property into community property.
Counsel for plaintiff-appellant has so forcefully and excellently presented in his brief his contentions that Mrs. Bailey’s separate and paraphernal title to the half interest in the properties acquired from her father was not divested, and vested in the community, through subsequent acts or events, and we are so thoroughly in accord with his argument, reasons and conclusions that we hereby quote and adopt as our opinion on this question that portion of the brief pertaining thereto, to-wit:
“(2) Appellant admits that, as a result of her failure to execute and record a declaration of paraphernality, all of the fruits and revenues of her separate estate from August 1, 1944[11] (including the agricultural and factory rentals of about $41,000.-00 received in 1945 and over $45,000.00 received in 1946) belonged to the community. Art. 2386, La.Civil Code, as amended by La.Acts 1944, No. 286, § l.[12]
“(3) Appellant also admits that if community funds were used by appellant knowingly, or with her knowledge and consent, express or implied, to pay any of the mortgage notes representing the purchase price *340 of this property, such a payment destroyed her separate title thereto. Betz v. Riviere, 211 La. 43, 62, 63, 29 So.2d 465, 472 (1947) and cases cited therein.[13]
* * * * * *
“Compensation by Effect of Law Does Not Occur, so as to Constitute Payment of a Debt Due by the Separate Estate of a Wife, Between the Latter and Funds Owned by the Community Estate.
“Appellant has admitted that all of the income and revenues from her separate property fell into the community after August 1, 1944. However, at all times until his death in 1947, Mr. Foster thought — and at all times until the death of appellant’s husband in 1961, he, Mr. McAnelly, and appellant thought — that all of the income from appellant’s separate property was paraphernal funds. (Testimony of appellant, Trans, pp. 80, 81; Testimony of Mr. McAnelly, Tras. pp. 84, 85.) In keeping Mr. Foster’s books and appellant’s separate account, Mr. McAnelly believed in 1946 that appellant owed her father $40,000.00, the latter owed appellant more than this amount; and these two debts cancelled themselves out pro tanto (See Exhibit Alice C. 1, Trans, p. 76.)
“Much the same thing happened with respect to the ‘payment’ of the second mortgage note in 1952. Appellant and her husband had advanced to the executrix of the Succession of W. Prescott Foster the sum of $37,968.76 to contribute to the Federal estate tax due, so as to wind up the succession earlier than would otherwise have been possible. Appellant owed the succession the five mortgage notes outstanding; so Mr. McAnelly gave appellant credit for $25,000.00, and made the appropriate entries showing that this second mortgage note had been paid. (See Exhibit Alice C. 1, Trans, p. 77.)
“(4) The ‘payment’ of both mortgage notes was mere bookkeeping entries, made by Mr. McAnelly on the assumption that these notes had been paid through compensation by effect of law. But no such compensation did occur, for the very simple reason that it could not have occurred under Louisiana law.
“ ‘When two persons are indebted to each other, there takes place between them a compensation that extinguishes both the debts.’ Art. 2207, Civil Code. Here, compensation by effect of law could not take place because appellant’s separate estate and the community estate were different legal entities — two different persons.
“The Supreme Court of Louisiana has had occasion heretofore to recognize this difference. Under a factual situation converse to that here, it said in Succession of Thibodaux, 10 La.Ann. 653 (1855) :
“ ‘It is clear that there could be no> compensation by operation of law in *341 such a case, and equally clear that a debt due by the husband cannot, against her consent, compensate by anticipation claims subsequently accruing to the wife. * * ’
“The Court’s position on this point was reiterated, and amplified in Hanrahan v. LeClercq, 15 La.Ann. 204, 205 (1860), where it was held:
“ ‘If the portion coming to the wife be considered a debt due from the administrator of the Succession of Wall, it still would not be in law, a debt due to the husband, but is a debt due to the wife, whose rights are separate and distinct from those of the husband, and consequently it cannot be affirmed that the administrator of the succession, and the husband, are the reciprocal debtors of each other, in the sense of Article 2203 (now 2207) of the Civil Code.
“ ‘Pothier says, in treating of compensation, that the debt must be due to the very person who opposes it as a compensation, “ejus quod non il debitur qui convenitur sed alii compensatio fieri non potest.” L. 9, Cod. Diet. tit.
“ ‘Therefore, I cannot set off against a debt due from myself one which is due to a person of whom I am tutor, or curator, or to my wife, having a separate estate.’ Pothier on Obligations, p. 3, c. 4, s. 2, No. 594; (Succession of Thibodaux) 10 La.Ann. 653. (Emphasis supplied.)
“See, to the same effect, Bear v. Dendinger, 141 La. 927, 930, 932, 75 So. 845, 847 (On rehearing, 1917).
“Appellant did receive monthly statements of her account from Mr. McAnelly; and, although the record does not show this, it is entirely possible that appellant’s late husband may have examined these statements. But any silence and inaction by appellant and her late husband, after receipt of these statements, did not constitute any ratification of the use of community funds to pay an indebtedness of appellant’s separate estate. As was said in Copeland v. Mickie, 17 La. 286, 293 (1841):
“ ‘ * * * We believe the true doctrine on this subj ect to be that the acts of the party from which a ratification is sought to be deduced must evince clearly and unequivocally his intention to ratify; if his acts can be in any manner accounted for, without a ratification of the contract necessarily resulting from them, they show no approval or confirmation on his part. 8 Toullier, page 705; No. 506, 507; Story’s Equity Jurisprudence, sec. 307; (Stokes v. Shackleford) 12 La.Rep. [170] 172. * *
“This rule was approved and followed in Bryant v. Levy 52 La.Ann. 1649, 1664, 28 So. 191, 197 (1900) ; and Noble v. Plouf, 154 La. 429, 434, 97 So. 599, 600 (1923).
“What appellant and her late husband approved, through their silence and inaction after receipt of these statements, was exactly what Mr. McAnelly intended to show — the use of paraphernal funds to pay an indebtedness of appellant’s separate estate. Further, there could not have been any ratification by appellant and her late husband because neither had knowledge of the act to be ratified. Blythe v. Hall, 169 La. 1120, 1127, 126 So. 679, 681 (1930); Jordan v. Smith, 206 La. 765, 769, 20 So.2d 17, 19 (1944); Credit Alliance Corporation v. Centenary College, 17 La.App. 368, 372, 136 So. 130, 132 (1931); State ex rel. Wheless Inv. Co. v. City of Shreveport, 142 So. 641, 644 (La.App.1932). Cf. Marigny v. Union Bank, 5 Rob. 354 (La.1843).
“So, there never was any valid payment of these two mortgages notes. The resultant legal situation is that appellant still owes the estate of W. Prescott Foster the $65,000.00 erroneously credited to these notes; and the estate of W. Prescott Foster owes that amount to the Succession of James J. Bailey. The entire matter may be settled simply through the direct payment *342 by appellant, under authority of an appropriate court order, of that amount to the Succession of James J. Bailey.
“This identical result is reached through the application of other principles of Louisiana law invoked in the next point urged by appellant.
0>)
“Use of Community Funds, Under an Error of Law, Does Not Constitute ‘Payment' of Portion of Price of Property Purchased by Wife’s Separate Estate Which Vests Title thereto fn the Community.
“ (5) When the wife’s title to property purchased for her separate estate is divested, and vested in the community, through the use of community funds to pay part of the purchase price, it is not the mere use of community fumds which effects this conversion. For instance, suppose that a husband, without the knowledge or consent of his wife, used community funds to pay a mortgage note given by the wife to secure the credit portion of the price of property purchased by her for her separate estate. Such a payment would not divest the separate title of the wife to this property, and vest it in the community; because if it did, it would place it within the power of the husband to convert all of the separate property of the wife to the community through the payment of a few dollars of community funds to apply on the credit portions of the purchase prices, withinout the knowledge or consent of the wife, and even against her will. The law in Louisiana has always protected the property rights of the wife vigorously,[14] and would never
tolerate such results for one moment.
“It is the intentional use of community funds to pay a part of the purchase price-of the wife’s separate property, either by the wife, or by another with her knowledge and consent, which vests the title in the community. To have such a legal effect,, the use of community funds must result from an exercise of the wife’s will — her volition, her intent to use the community funds for such a purpose. Two simple hypothetical cases will serve to demonstrate this point. Firstly, suppose that a wife who has purchased property on credit for her separate estate, and who has ample para-phernal funds to meet the credit instalments-as they accrue, issues her personal check (paraphernal funds) to meet such an instalment, but through an error of the bank this check is cleared through and charged against her husband’s account (community funds). Secondly, suppose that the wife of a wealthy man, who herself has ample paraphernal funds to meet the credit instal-ments to become due on property purchased' for her separate estate, has two bank accounts. In one, she deposits only her para-phernal funds. In the other, she deposits only the community funds given her monthly by her husband to defray her household' expenses; and since this allowance is a. generous one, and the wife a prudent manager, a considerable balance has been accumulated therein, all of which belongs to the community. Suppose that when a mortgage *343 note on one of the properties which she is buying falls due, she wishes to pay it with a check drawn on her paraphernal account. However, in reaching into her desk, she pulls out the wrong checkbook and pays the mortgage note with a check drawn on her household account. Would the wife’s use of community funds in either of these hypothetical cases have the effect of divesting her paraphernal title to the property and vesting title thereto in the community?
“These questions are purely rhetorical and answer themselves. But they do serve to illustrate the rule of law which applies in those cases. It is the intentional use by the wife (or with her consent, express or implied) of community funds in the acquisition of property which alone converts her separate title into community ownership. Here, it is necessary to draw a close, but an important, distinction. Appellant does not contend for one moment that when a wife deliberately and intentionally uses community funds for such a purpose the legal effect thereof is nullified through any mental reservation on her part, or even her ignorance of the legal effect thereof. Under the law, all persons are subject to the legal effect of their intentional and deliberate acts. Appellant does submit, however, that when the wife has no intention to use community funds for such a purpose, or has no knowledge that she is using community funds, the mere use thereof does not have the legal effect of divesting her paraphernal title, and vesting title thereto in the community.
“As pointed out before, all of the persons who had any connection whatever with the transactions which are pertinent here — Mr. Foster, appellant, her late husband, and Mr. McAnelly — thought that the fruits and revenues of appellant’s separate property were her paraphernal funds; and when these funds were used for the purpose of paying the two mortgage notes none of them realized that they were community funds. The only difference between the hypothetical cases given above, and the facts of this case, is that in the former the parties labored under an error of fact, while here all of the parties labored under an error of law. There are certain differences of effect between an error of fact and one of law,[15]
but none of these differences is pertinent in this case. Here, appellant is invoking an error of law ‘as the means of preventing loss/ which she is permitted to do under Art. 1846(3), La.Civil Code.
“Insofar as the facts of this case are concerned, the result would be quite the same regardless of whether the principals in the transactions pertinent here labored under an error of fact, or one of law. Error of both kinds would vitiate and nullify the requisite consent of appellant here. As the Supreme Court of Louisiana had occasion to point out in Pan American Production Co. v. Robichaux, 200 La. 666, 676, 8 So.2d 635, 639 (1942):
“ ‘ * * * Consent in law is more than a mere formal act of the mind. Legal consent is an act unclouded by error or mistake. Consent is vitiated by error. * * aje t
“Contracts entered into when one of the parties thereto labored under an error of law have been held invalid repeatedly by our Supreme Court, under an application of the principles enunciated in Articles 1819-1823, and 1846 of the Civil Code, Tanner v. Robert, 5 Mart. (N.S.) 255 (La. 1826); Theriot v. Chaudoir, 17 La. 445 (1841); Williams v. Hunter, 13 La.Ann. 476 (1858); Wilberding v. Maher, 35 La. Ann. 1182 (1883); Brock v. Black, Rogers & Co., 192 La. 49, 187 So. 51 (1939); Bruyninckx v. Woodward, 217 La. 736, 47 So.2d 478 (1950); See also, Cheramie v. Stiles, 215 La. 682, 689, 41 So.2d 502, 504 (1949) and Pan American Production Co. v. Robichaux, supra.
*344 “In Bruyninckx v. Woodward, supra, the Supreme Court set aside a judgment of possession defining, and a contract with the children of the deceased husband by a prior marriage settling, the separate and community property of the deceased, at the instance of his widow, who had acted in ignorance of the law respecting separate and community property.
“It is quite true that both the code articles and the cases cited above relate to contracts which were invalid because of an error under which one of the parties labored. It is also true that in the present case there is no contract involved, but only the unilateral act of appellant. But the law relating to contracts governs the legal effect of the unilateral act of a person who labored under an error of law at the time. The analogical extension of code articles to similar cases is a familiar and common judicial technique in civilian jurisdictions. The application of the code rules vitiating a contract entered into by one of the parties under an error of law to a case determining the legal effect of a unilateral act would be called for even had our Supreme Court not had an opportunity to consider the matter.
“It so happens, however, that the Supreme Court has had such an opportunity, and in a rather recent case has applied the code rules relating to error of law to determine the legal effect of a unilateral act of the wife which affected her property rights. In Pearlstine v. Mattes, 223 La. 1032, 67 So.2d 582 (1953), the wife had executed a formal disclaimer of interest with respect to property which had once been owned by her husband, but which had been transferred to his sister after a judgment of separation from bed and board. This property had been purchased by the husband during the marriage, allegedly for his separate estate, but the act of sale had no recital that it was being so purchased. At the time the wife entered this disclaimer, she labored under an error of law and thought that this property belonged to the separate estate of her husband. Subsequently, she learned that it was community property, and: she had a half-interest therein. She sued to partition the property and the defendant pleaded, inter alia, the wife’s disclaimer of title. In holding that this disclaimer had no legal effect because at the time it was. made the wife labored under an error of law, the court said (223 La. at 1045, 67 So.2d at 587):
* * (P)laintiff’s error of law in disclaiming her ownership may be invoked as a means of recovering “ * * * what has been given or paid under such an error.” See paragraph 3 of Article 1846 of the LSA-Civil Code.’
“In the instant case, all persons who had' any csnnection with the pertinent transactions — Mr. Foster, appellant, her late husband, and Mr. McAnelly — all labored under-an error of law. All believed that the fruits and revenues of appellant’s separate properties were her paraphernal funds. At the time these two ‘payments’ on the mortgage indebtedness were made, it was. thought that they were being paid with paraphernal funds. Appellant never intended to use, and never consented expressly or impliedly to the use of, community-funds for the payment of the mortgage-indebtedness on her separate property. Consequently, in contemplation of law, these-were not payments and they did not have the effect of divesting her separate title,, and vesting title to the property in the community.
“Once again, the resultant legal situation-is that appellant still owes the estate of W. Prescott Foster the $65,000.00 erroneously credited to these notes; and the estate-of W. Prescott Foster owes that amount to-the Succession of James J. Bailey, Jr.. Once again, the entire matter may be settled* simply through the direct payment by appellant, under authority of an appropriate-court order, of that amount to the Succession of James J. Bailey.”
*345 The proof required, that all the parties acted under an error of law in the use of community funds, must be equally strong and convincing as that required to show that the property was originally acquired by the separate estate, that is it must be •affirmative, strict, certain and positive. ■Once this burden has been met, as it has been in this case, there is no good reason to •deny the separate estate that which rightfully belongs to it, subject to a claim of the ■community for that which may have been paid through error.
It is therefore unnecessary to consider •appellant’s other contention that payment ■of the $65,000.00 should be held to have been made out of capital assets of the wife rather than out of community funds, under the decision of Graves v. United States Rubber Company, 237 La. 505, 111 So.2d 752 (1959).
The judgment appealed from it hereby •■annulled, set aside and reversed and it is mow ordered, adjudged and decreed that 'there be judgment herein decreeing the property described in Exhibit “1” attached •to the judgment of the District Court and ■made a part thereof is owned by Mrs. Fair-•fax Foster Bailey as her separate and para-phernal property.
It is further ordered, adjudged and de■creed that the ,%ths mineral interest reserved to appellant under the act of sale by 'her and her father to Alice C. Plantation & Refinery Inc. on March 31,1947, as amended •on May 19, 1947, in all of the immovable properties particularly described in Exhibit “2” of the judgment of the court below is the separate and paraphernal property of •appellant.
It is further ordered, adjudged and de■creed that in all other respects the judgment ■of the District Court is affirmed, costs of ■this appeal to be paid by Mrs. Fairfax Foster Bailey in her capacity as executrix ;of the Succession of James J. Bailey.
Reversed in part and affirmed in part.

. The trial judge reasoned that as the half interest in immovables did belong to the community, Alice O. acquired a valid title thereto by virtue of the intervention of Mrs. Bailey’s late husband in the acts of conveyance and correction; because by virtue of said intervention, Mr. Bailey, his heirs and creditors are estopped from asserting the community tide; and because Alice C. has now acquired a valid title through acquisitive prescription of ten years.

. Donation was actually $20,000.00 but $5,000.00 was used to pay a life insurance premium and $12,000.00 was used to purchase Live Oak Plantation.

“11. The effective date of the amendment of Art. 2388, Civil Code by La.Acts 1944, No. 286, § 1.

“12. See, to the same effect: United States v. Burglass, 172 F.2d 960, 963 (C.C.A. La.1949); Slater v. Culpepper, 233 La. 1071, 1100, 99 So.2d 348, 359 (On rehearing, 1957); K. & M. Store v. Lewis, 22 So.2d 769, 771 (La.App.1945); Trorlicht v. Collector of Revenue, 25 So.2d 547, 551 (La.App.1946); Matthews v. Hansberry, 71 So.2d 232, 235 (La.App. 1954); Smith v. Smith, 117 So.2d 670, 673 (La.App.1960). See also Oppenheim The Significance of Recent Louisiana Legislation Concerning the Community — Louisiana Acts 49 and 286 of 1944,19 Tulane L.Rev. 200, 211 (1945); Huie, Separate Ownership of Specific Property Versus Restitution from Community Property in Louisiana, 26 Tulane L.Rev. 427, 430 (1952); Morrow, Matrimonial Property Law in Louisiana, 34 Tulane L.Rev. 3, 13, 14 (1959), Cf. Graves v. United States Rubber Company, 237 La. 505, 111 So.2d 752 (1959).

“13. See, to the same effect: Succession of McMahon, 176 La. 63, 65, 145 So. 269 (1933); Tillery v. Fuller, 190 La. 586, 601, 182 So. 683, 688 (1938); Cameron v. Rowland, 215 La. 177, 198, 199, 40 So.2d 1, 8 (1948); Succession of Schnitter, 220 La. 323, 329, 56 So.2d 563, 565 (1951); Succession of Franek, 224 La. 747, 760, 70 So.2d 670, 675 (On rehearing, 1954); Guilbeau v. Guilbeau, 224 La. 837, 846, 71 So.2d 129, 132 (1954); Prince v. Hopson, 230 La. 575, 582, 89 So.2d 128, 131 (1956); Graves v. United States Rubber Company, 237 La. 505, 514, 111 So.2d 752, 755 (1959) ; Southwest Natural Production Company v. Anderson, 239 La. 490, 496, 118 So.2d 897, 899 (1960); Drewett v. Carnahan, 183 So. 103, 106 (La.App.1938) noted 1 La.L. Rev. 212 (1938); Cox v. Caldwell, 197 So. 167, 170 (La.App.1940); Smith v. Brock, 200 So. 342, 344 (La.App.1941) ; Succession of Valdez, 44 So.2d 151, 158, 159 (La.App.1950); Succession of Tullier, 53 So.2d 455, 457 (La.App.1951); Higginbotham v. Anders, 69 So.2d 107, 113 (La.App.1953); Butler v. Burks, 99 So.2d 180, 183 (La.App.1957); Joseph v. Travis, 99 So.2d 548, 551 (La.App. 1957); Van Horn v. Vining, 133 So.2d 901, 904 (La.App.1961); Vincent v. Superior Oil Company, 178 F.Supp. 276, 284 (W.D.La.1959). See, also, Daggett, The Community Property System of Louisiana, 15 (1945).

“14. The public policy of Louisiana to protect the property rights of a wife as fully as possible is evidenced by a number of code provisions. For instance, the wife has a privilege on all of the movables, and a legal mortgage on. all of the immovables, of the husband to secure the restitution of her dotal effects. Art. 2376, La. Civil Code. She also has a legal mortgage on all of the property of the husband to secure the restitution of para-phernal funds used by him. Art. 2390, id. Even an insolvent husband may make a dation en paiement to effect restitution of the separate funds of the wife which he has used. Art. 2446(2), id. The wife may obtain a separation of property whenever her separate estate is jeopardized by the involved affairs of the husband. Arts. 2425 et seep, id. During the pendency of an action for a divorce, or a separation from bed and board, the wife may obtain injunctive relief te prevent the husband from disposing of, or alienating, the property of the community. Art. 3944, La.Code of Civil Procedure.

“15. The limitations on the legal effect of an error of law are set forth in Art. 1848, La.Civil Code.