BARHAM, Judge.
Thomas Earl Barr died testate during his marriage to and while living with his second wife. Mrs. Hazel Brooks Barr, hereinafter referred to as Wife II. However, his will named his first wife, Mrs. Hazel Smythe Barr, hereinafter referred to as Wife I, as universal legatee and testamentary executrix. The will was admitted to probate and Wife I was confirmed as executrix. The Notary Public filed an inventory showing a community estate for the deceased valued at $5,899.08. On January 21, 1966, this inventory was approved and homologated.
Wife I filed a rule to traverse the inventory alleging that all of the property owned by and all of the assets held by Wife II were part of the community, and, therefore, the inventory should be amended to include these assets as part of the deceased’s estate. The rule requested a complete accounting, the delivery of all assets held by Wife II, the filing of her financial statement, and the reply to interrogatories which were attached thereto. Wife II and the Notary Public filed an exception of no cause or right of action to the rule urging that it did not support the community nature of the other assets.
As reflected by minute entry dated September 26, 1966, Wife II was relieved by court order from answering interrogatories and from producing a financial statement. Wife I applied for writs from that ruling to this Court and to the Supreme Court which were denied.
The rule to traverse the homologation of the inventory was set for trial. A stipulation of facts was filed in the record, and numerous exhibits were attached as part of this stipulation. When the rule was submitted to the lower court for trial on the stipulation of facts, the exception of no cause and no right of action was sustained. It is from this judgment dismissing her rule that Wife I appeals.
It is not disputed that the deceased and Wife II lived together from November 30, 1944, the date of marriage, until August 5, 1965, the date of his death. It is stipulated that Wife II had a net worth of approximately $10,000.00 at the time of the marriage in 1944. The nature of this separate estate is not clearly defined except as being partly comprised of a restaurant and boarding house business, but not including the ownership of any real property. The stipulation is that Wife II used the funds derived from the sale of these businesses in 1945 to begin developing and selling real estate. Pertinent to this decision is the following portion of the stipulation:
“She purchased some acreage on the Greenwood Road and first developed Guerry Park Subdivision, consisting of some 44 lots. She had the streets and utilities placed in the subdivision and completely developed it; selling some of the lots to other builders and building some homes herself for sale to others. Mrs. Hazel B. Barr estimates that she *771 made some 40 or SO thousand dollars out of this development. None of Mr. Barr’s earnings went into Mrs. Barr’s real estate transactions. All funds came from her account at the First National Bank, which Mr. Barr could not draw on, and all profits and proceeds went back into this account.”
The stipulation further lists other real estate development and operations which were conducted in a similar manner.
The exhibits attached to the stipulation show that most of the deeds of acquisition contain a claim by Wife II that the properties were acquired with her separate and paraphernal funds and were to be her separate and paraphernal estate. The deceased joined in most of these deeds with an affidavit of paraphernality in her behalf. However, some deeds of purchase do not contain such affidavits by the husband and many of the deeds of sale executed during this marriage are made as joint sales by Wife II and the deceased.
LSA-C.C. art. 2402 states:
“This partnership or community consists of the profits of all the effects of which the husband has the administration and enjoyment, either of right or in fact, of the produce of the reciprocal industry and labor of both husband and wife, and of the estate which they may acquire during the marriage, either by donations made jointly to them both, or by purchase, or in any other similar way, even although the purchase be only in the name of one of the two and not of both, because in that case the period of time when the purchase is made is alone attended to, and not the person who made the purchase. * * * ”
LSA-C.C. art. 2405:
“At the time of the dissolution of the marriage, all effects which both husband and wife reciprocally possess, are presumed common effects or gains, unless it be satisfactorily proved which of such effects they brought in marriage, or which have been given them separately or which they have respectively inherited.”
The presumption contained in LSA-C.C. arts. 2402 and 2405 is commented upon in Houghton v. Hall, 177 La. 237, 148 So. 37 (1933):
“This presumption is not overcome by the declaration of the spouses in a deed to the wife that the latter is purchasing with her own separate and paraphernal funds, under her separate administration, Shaw v. Hill, 20 La.Ann. 531, 96 Am. Dec. 420; Gogreve v. Dehon, 41 La.Ann. 244, 6 So. 31. The wife, and those claiming through or from her, to overcome the presumption in favor of the community, must establish three crucial facts, namely: (1) the paraphernality of the funds; (2) the administration thereof separately and apart from her husband; and (3) investment by her. Stauffer, Macready & Co. v. Morgan, 39 La.Ann. 632, 2 So. 98.”
See also Succession of Joseph, 180 So.2d 862 (La.App. 3d Cir. 1965):
“Under our Louisiana community property law, all property acquired during a marriage is presumed to be community, with certain limited exceptions such as property inherited by or donated to the wife or acquired by her with her separate funds. LSA-C.C. Arts. 2334, 2402, 2405. The burden of overcoming the presumption of the community nature of property acquired during the marriage rests upon the party asserting its separate and paraphernal nature; to satisfy this heavy burden, the proof must be strict, clear, positive, and legally certain that the property was acquired with separate and paraphernal funds. Monk v. Monk, 243 La. 429, 144 So.2d 384; Prince v. Hopson, 230 La. 575, 89 So.2d 128, and jurisprudence there referred to.”
LSA-C.C. art. 2386:
“The fruits of the paraphernal prop-perty of the wife, wherever the property be located and hotivever administered, whether natural, civil, including interest, *772 dividends and rents, or from the result of labor, fall into the conjugal partnership, if there exists a community of ac-quets and gains; unless the wife, by written instrument, shall declare that she reserves all of such fruits for her own separate use and benefit and her intention to administer such property separately and alone. The said instrument shall be executed before a Notary Public and two witnesses and duly recorded in the Conveyance Records of the Parish where the community is domiciled.” (Italics supplied)
The complete record presented to the trial court and now upon appeal to this Court for the determination of the rights of the party litigants and the nature and extent of the estate of the deceased, consists only of the pleadings, a four-page stipulation of facts, and the attached exhibits, which are copies of deeds of purchase and sale. The marriage of deceased and Wife II existed for more than 20 years. The affidavit required by LSA-C.C. art. 2386 was never filed during this time. The alleged separate estate of Wife II increased in value during the marriage from $10,-000.00 to in excess of $100,000.00. Under the stipulation it must be concluded that some of the funds which were invested in Wife IPs bank account and/or subsequent real estate transactions were the result of her labor and were “fruits”, to-wit:
“ * * * completely developed it; selling some of the lots to other builders and building some homes herself for sale to others.”
Clearly a portion of that which is claimed to be paraphernal by Wife II has become community property since she failed to comply with LSA-C.C. art. 2386. Conceding that Wife II had a separate and para-phernal estate, then these are “fruits of the paraphernal property of the wife” which have become comlnunity property. Matthews v. Hansberry, La.App., 71 So.2d 232:
“Whatever may be the intention of the wife, she is not permitted to claim that any funds produced by her labor or fruits of her separate estate do not fall into the community unless, in compliance with the requirements of Article 2386, she has, before a notary public and two witnesses, executed a statement declaring her reservation of the fruits of her separate property and her intention to separately administer her property and has recorded that document in the conveyance records of the parish where the community is domiciled.”
The instant case is distinguished from Bailey v. Alice C. Plantation & Refinery, Inc., 152 So.2d 336 (La.App. 1st Cir. 1963); Graves v. United States Rubber Co., 237 La. 505, 111 So.2d 752 (1959); Abraham v. Abraham, 230 La. 78, 87 So.2d 735 (1956); and Daigre v. Daigre, 228 La. 682, 83 So. 2d 900, 55 A.L.R.2d 951 (1955), wherein the courts narrowly defined “fruits” or invoked the error of law doctrine. The error of law doctrine is applicable only to acquisition of property and the determination of that estate into which it falls.
We have concluded, therefore, that during the existence of the marriage there were fruits of the wife’s separate estate which have become community property, and, therefore, some of the assets and property claimed by Wife II belong to the community of acquets and gains or she owes an accounting and a debt to the community estate.
The trial court refused to order a financial statement and accounting from Wife II and refused to order the answering of interrogatories by her. Although writs taken to this ruling were denied, apparently on procedural grounds, by both this Court and the Supreme Court, compliance with these requests is now necessary for a full determination of the case. We have not and will not determine herein what properties were the separate estate of Wife II or what properties Wife I, who is not a forced heir but is the universal legatee, *773 can claim as community property. A claim of estoppel as a defense to some of the contentions and allegations of the appellant may he good and may deny Wife I the right to assert interest in certain acquisitions under a claim that they are community property. However, estoppel cannot deny the community the benefits of the fruits derived from any separate estate.
The record before us is not sufficient for a final and definitive judgment as to all of these matters. It is the judgment of this Court that this suit be remanded to the trial court and re-opened for testimony and further proceedings in comformity with the views herein expressed.
Costs of this appeal are assessed against appellee. All other costs to await final determination of this case.