*493
 
 McCALEB, Justice.
 

 This is a concursus proceeding brought by the mineral lessee of all claimants to the royalty rights in production allocable to a certain forty acre tract in Lincoln Parish. This tract is included in a drilling and proration unit known as the “McCrary Unit”, and plaintiff is seeking a judicial determination of the ownership of funds held by it which represent royalty due the owner of the forty acres resulting from the mineral production of the McCrary Unit. The opposing claimants to the funds deposited by plaintiff in the registry of the court are, on the one hand, the legal heirs of Mittie Platter, and, on the other hand, the legal heir of John Hatter, who is Catherine Woodard.
 

 The record discloses the following facts: Mittie Bradshaw Hatter married John Hatter on February 10, 1898. Scott Bradshaw, father of Mittie Hatter, was married twice and Mittie was a child of the first marriage. Upon the death of Mittie’s mother in 1901, Mittie inherited her mother’s one-half community interest in eighty acres of land, subject to her father’s usufruct. When Bradshaw thereafter remarried, he forfeited his right to the usufruct of his daughter’s half interest in the land. However, Scott Bradshaw was apparently unwilling to divide the eighty acre tract with his daughter so, on November 27, 1901, he purchased from Mittie her one-half interest therein for $300. Then, on November 29, 1901, just two days later, Mittie Hatter purchased from Jordan Gibson, for $300, the forty-acre tract which is in dispute in the instant case. The deed recited that the $300 was “paid by Mittie Hatter out of her separate paraphernal fund” and that the property was conveyed and delivered “to Mittie Hatter to be her separate property.” The deed also recited that Mittie Hatter was joined therein by her husband, but he did not sign the deed nor does his name appear on it.
 

 Mittie and John Hatter separated about the time the above mentioned transactions were made, but they were never legally separated or divorced, and the marriage was not dissolved until Mittie Hatter died in 1921. At her death, Mittie left a will in which she bequeathed all of her property to one Earnest Spivey. The will was attacked by the collateral heirs of Mittie Hatter and, as a result of a compromise of the matter, Spivey was paid a sum of money and the collateral heirs were recognized by the Court as Mittie’s sole and only heirs and placed in possession of the property involved in this suit. John Hatter was not a party to those proceedings, but he lived until 1949 and, so far as the record shows, never made any claim to the property in question. He left as his sole heir a sister, Harriett Anderson, who subsequently died and left as her sole heir
 
 *495
 
 Catherine Anding Woodard, who is presently contesting with the Mittie Hatter heirs the ownership of the royalties held by plaintiff in this suit.
 

 The Mittie Hatter heirs contend, among other things,
 
 [1]
 
 that the land was the separate and paraphernal property of their ancestor, while the John Hatter heir claims that the tract, having been purchased during the marriage of John and Mittie Hatter, was community property, and that John Hatter thereafter acquired Mittie’s interest in the land by inheritance upon dissolution of the community by her death in 1921, he having become her heir under Article 915 of the Civil Code, as she left neither ascendants nor descendants.
 

 After a trial on the merits, the district judge, in a well considered opinion, upheld the primary contention of the Mittie Hatter heirs and decreed that the land in question was Mittie’s separate property. Catherine Woodard has appealed from the adverse decision, contending principally, as she contended in the district court, that the Mittie Hatter heirs have failed to carry the burden of overcoming the presumption that the land purchased during the existence of the marriage was community property.
 

 The law on the issue involved was recently restated by this Court in Prince v. Hopson, 230 La. 575, 89 So.2d 128, 130, as follows:
 

 “It is well settled in this state that property purchased in the name of either spouse during the existence of the community of acquets 'and gains is presumed to be community property. Arts. 2334, 2402, La.Civ.Code; Salassi v. Salassi, 220 La. 785, 57 So.2d 684. When a married woman buys property in her own name, failure to make a recitation of paraphernality in the deed is not fatal, and she may overcome the presumption of community by showing (1) that the funds constituting the price paid for the property were paraphernal funds, (2) that they were administered by her, and (3) that they were invested by her. Houghton v. Hall, 177 La. 237, 148 So. 37; Succession of Farley, 205 La. 972, 18 So.2d 586; Betz v. Riviere, 211 La. 43, 29 So.2d 465; Cameron v. Rowland, 215' La. 177, 40 So.2d 1. The proof necessary to overcome this presumption must be strict, clear, positive, and legally certain. Cameron v. Rowland, supra, and authorities therein cited.”
 

 
 *497
 
 In evaluating the evidence in this case, some allowance must be given to the time and circumstances under which the claims are being made, since the purchase with which we are here concerned occurred over 53 years before the instant suit was instituted, and the parties involved therein are now deceased. With this in mind, we are constrained to find that the evidence adduced by the Mittie Hatter heirs, to prove that Mittie acquired the tract with her separate funds which were under her administration and control, was clear, positive and legally certain.
 

 In the first place, the deeds filed in evidence show that Mittie, on November 27, 1901, sold all her rights in her mother’s estate to her father for $300, and then two days later purchased the property here in dispute for $300. In view of such circumstances, even without corroborating téstimony, the inference is very strong that the funds constituting the price paid by Mittie for the property were the paraphernal funds received by her two days before as payment for her inheritance rights.
 

 Moreover, it is reasonable to conclude that Mittie Hatter had assumed the administration and control of the paraphernal funds she obtained from the sale of her interest in the property inherited from her mother — for, within two days from the date she received the money, she used the entire amount to acquire the land involved herein. This fact is also supported by the evidence which shows that Mittie and John Hatter were no longer living together when the land was purchased. Several negroes, who had resided in the community and even the contestant, Catherine Woodard, stated that John Hatter had left town with a drummer at the time Mittie got the land.
 

 Two elderly negroes, aged 83 and 84, testified that it was generally understood in the community that Mittie’s father, Scott Bradshaw, had bought the land in question for Mittie from Jordan Gibson. If this is true, the property would, nevertheless, have been Mittie’s separate property. See Smith v. Smith, 230 La. 509, 89 So.2d 55. There was other testimony concerning Mittie’s father having bought the property for her, including one woman who stated that she actually saw the $300 in Jordan Gibson’s hand, and that Gibson told her at that time that he got the money from Scott Bradshaw when he sold to him the land in question. Also, Susie Wiltz, one of the Mittie Hatter heirs, testified that she spent quite a bit of time at the Scott Bradshaw house when she was a child and that she remembered that Mittie and Scott’s second wife could not get along; that Scott did not want to divide his eighty acres with
 
 *499
 
 Mittie, so Scott bought a forty and moved Mittie on it.
 

 Even though much of the testimony cited in the paragraph above was based on hearsay, it is evidence of the fact that certain things were said and generally known and understood in the community at the time the land in dispute was purchased by Mittie Hatter. See Succession of Buck, 208 La. 556, 23 So.2d 215.
 

 Albeit this testimony cannot be regarded as proof of the true facts, it is receivable as explanatory and in corroboration of the known facts which have been established by documentary and circumstantial proof, where, as in this case, the parties upon whom the burden of proof has been imposed are unable to produce other direct evidence due to the failure of the ancestor of their opponent to assert his claim at a time when direct evidence was available.
 

 After considering all the evidence, we are satisfied that the trial judge made no mistake in holding that the land was the separate property of Mittie Hatter. Therefore, it is not necessary to pass on the questions presented by the alternative pleadings of the Mittie Hatter heirs.
 

 The judgment is affirmed.