311 So.2d 268 (1974)
Sally Stafford NELSON
v.
John Prewitt NELSON, Jr.
No. 9707.
Court of Appeal of Louisiana, First Circuit.
December 16, 1974.
*269 Ashton L. Stewart, Baton Rouge, for appellant.
R. Boatner Howell, Jr., and Dennis Whalen, Baton Rouge, for appellee.
Before LANDRY, BLANCHE and NEHRBASS, JJ.
BLANCHE, Judge.
Appeal Nos. 9707, 9820, 311 So.2d 276 and 9898, 311 So.2d 277 and an application for writs in No. 9836, 311 So.2d 277, involve three issues. The first is the correctness of the award of alimony pendente lite and child support in favor of plaintiff wife. The second is the failure of the trial court to consider the defendant husband's plea of compensation as an offset to plaintiff wife's judgment for past due alimony. The third issue is raised on application for writs by the defendant husband, which this Court granted, wherein he complains of a judgment holding him in contempt of court for failing to pay past due alimony. This opinion will deal with the issues presented in all four matters, although separate decrees in each matter will be rendered.
When suit was first filed on May 15, 1972, a rule nisi issued in connection therewith to fix alimony and child support pendente lite. The rule was returnable on May 25, 1972, and a portion of the evidence was taken thereon that same day. On June 1, 1972, the case came on for further hearing, the testimony was completed, and the matter was taken under advisement. On June 21, 1972, plaintiff through his counsel filed another rule entitled "Rule for Maintenance Pending Decision on Alimony Pendente Lite and for Discontinuance of Visitation until Alimony and Support Payments Are Made." Counsel for plaintiff refers to this rule as "an extraordinary rule" for the reason that the defendant was allegedly continuing his economic coercion of the plaintiff pending a decision by the court on the rule at issue when the suit was first filed. The defendant answered the rule, referring to the same as "Answers to Plaintiff's Rule for Maintenance Pending Decision on Alimony Pendente Lite * * *," alleging that he had no income other than approximately $700 per month and that the plaintiff had taken from the community $14,799.03 in cash.
We are unaware of any procedural law which sanctions the filing of such a rule to provide "Maintenance" for a wife pending a judge's decision on a rule previously issued for that same purpose. Nevertheless, the trial judge made the rule absolute to the extent that it ordered the defendant to make alimony payments to the plaintiff at approximately $650 per month. The minutes of the court dated June 29, 1972, show that the judgment was rendered "pending a ruling of the court on the matters presently under advisement." The signed judgment which was dated July 11, 1972,[1] recognizes *270 the pendency of the rule issued when suit was first filed, as it specifically provided:
"IT IS ORDERED, ADJUDGED AND DECREED that pending ruling on alimony pendente lite, which has been submitted to the court on briefs, defendant is ordered * * *." (Record, No. 9707, p. 34-Emphasis supplied)
Thereafter, the case was tried on its merits with judgment being eventually signed on April 3, 1973, granting defendant-reconvenor a separation from bed and board on the reconventional demand filed by him. The judgment also fixed alimony pendente lite in favor of the wife and maintenance and support for the minor child of the marriage at the sum of $1,500 per month, making said alimony retroactive to the date of filing of the suit, with credit for such sums paid under the previous alimony judgment rendered on July 11, 1972, on a rule nisi.
After a partial new trial in the case, another judgment was rendered on May 11, 1973, which annulled and set aside the judgment of April 3, 1973, only with respect to alimony pendente lite, child support and visitation rights. This "Judgment on Rule for Partial New Trial" of May 11, 1973 (in addition to other matters involving visitation, et cetera, irrelevant to the appeal), ordered that the prior award of $1,500 be allocated $750 per month for alimony pendente lite and $750 for child support, commencing May 15, 1972, and allowing defendant full credit for all sums previously paid pursuant to prior orders of the court.
Suit No. 9707 involves a devolutive appeal by defendant from the judgment dated May 11, 1973. The plaintiff answered the appeal in said case, requesting that alimony and child support be increased to $3,000 per month. Relative to this appeal, counsel for defendant sets forth two assignments of error. As we appreciate them, the first, in essence, is a complaint concerning the amount of alimony which the trial judge ordered the defendant to pay, under the circumstances; and the second is an alternative assignment of error urging that the trial court erred in making the May 11, 1973, judgment for alimony rendered by it retroactive to the date of the filing of the suit on May 15, 1972.
LSA-C.C. Art. 148[2] states the law applicable to alimony pendente lite and provides that if the wife has not sufficient income for her maintenance pending the suit for separation from bed and board the judge shall allow her a sum for her support proportional to her needs and to the means of her husband. Defendant's counsel admits that if the only issue were "the needs of the wife," then the evidence would support the $1,500 award of alimony pendente lite. However, he seriously contests the "means of the husband" to pay such amount, stating the husband's only means is an average monthly income of $732. Counsel for defendant points out the trial judge held by inference that the husband could not pay $1,500 per month, by previously fixing the award at an estimated $650 on the rule nisi and by stating the defendant might not be able to provide the sum awarded though Mrs. Nelson was entitled to that amount. We are unable to draw any such inference as defendant contends, for it is obvious that when the trial judge ordered the defendant to pay plaintiff $650 per month, he had not reached a decision on the amount of alimony pendente lite that defendant should finally be required to pay.
We believe the trial judge was eminently correct when he fixed the alimony at $1,500 per month and made it retroactive to the date of the filing of the suit, despite *271 defendant's claim that he only had $732 in funds out of which to pay such a judgment.
The record reveals that the Fidelity National Bank of Baton Rouge totally manages the defendant's financial affairs. During the six-year period of the marriage, he lost $740,639.31 through his business ventures. Through selling the assets of his separate property, he realized some $959,765.70. He lived on approximately $219,126.39. Other testimony from both plaintiff and defendant indicates their standard of living was supported by annual expenditures ranging from $45,000 to $60,000 per year. Furthermore, up until shortly before the parties separated, the defendant deposited from $1,750 to $2,300 per month to plaintiff's account for the purpose of paying household expenses. The testimony also shows that the aforesaid sums represented approximately one-half of the total income from certain oil royalties which were pledged to the bank. Nevertheless, after a conference was held with one of the bank officers, the above sums were deposited to plaintiff's account, on the bank's and defendant's instructions.
We further observe that the magnitude of the business crises successfully met by defendant and the bank during that time make the defendant's obligation for $1,500 to his wife and child seem miniscule. Even though all of the defendant's assets are pledged and cross-pledged to the bank, we have no doubt that defendant can make some arrangement to pay the alimony judgment against him without sacrificing his separate properties. Support for this assumption lies in the fact that despite his financial reverses and high living standard, he had sold almost one million dollars worth of his assets during the foregoing period and still, by his own estimation, had assets left exceeding a million dollars.
In plaintiff's answer to the appeal, she complains that alimony and child support are inadequate and should be increased to $3,000 per month. Concerning this, defendant points out that during the marriage his wife enjoyed having a social secretary, a live-in housekeeper, two other full-time servants, Tennessee thoroughbred horses, periodic purchasing trips to New York and expensive travel, purchases of antiques and objects of art, and memberships in the Camelot Club, City Club and Bocage Racquet Club in the City of Baton Rouge. We are impressed with the luxurious manner in which the parties lived during their marriage and acknowledge that the husband is obliged to support his wife and child in order to maintain them in the standard of living comparable to that which they enjoyed prior to the separation. Thomas v. Thomas, 281 So.2d 471 (La.App.4th Cir. 1973).
Albeit both parties may have to forfeit some of the luxuries they have personally enjoyed during the marriage, we feel confident that an award of $1,500 per month is more than necessary to meet the needs of the defendant's wife and child and to furnish them a living standard comparable to that which they enjoyed before the separation. In any event, such an award was not an abuse of the trial judge's wide discretion and is affirmed.
The next issue in connection with this appeal is whether the trial judge, when judgment was rendered on May 11, 1973, could properly make the alimony award of $1,500 per month retroactive to the date of filing the suit, with credit for alimony payments of approximately $650 per month made by the defendant under the judgment previously rendered on the rule nisi. We are of the opinion that such action on the trial judge's part was legally correct, for we regard the judgment of May 11, 1973, as the only judgment finally adjudicating the amount of alimony pendente lite. Fortunately, we are able to escape a determination of the nature and effect of the alimony portion of the judgment rendered on July 11, 1972, though we observe that such a judgment "piecemealing" the payment of alimony pendente lite is irregular on its face and not in accordance *272 with legal practice or procedure. Alimony pendente lite is due from the date of judicial demand, Stansbury v. Stansbury, 258 So.2d 170 (La.App.1st Cir. 1972), and the trial judge was correct in ordering payment from the date suit was filed.
As alimony is no more than a judicial sanction and enforcement of the husband's obligation to support his wife and minor children during the pendency of a suit for separation or divorce, any amount which defendant paid under the foregoing judgment of July 11, 1972, without regard to the validity vel non of such a judgment, is due as a credit. Coney v. Coney, 215 La. 667, 41 So.2d 497 (1949).
Following the rendition of the judgment signed on May 11, 1973, increasing alimony pendente lite and child support to $1,500 per month and making it retroactive to the date of judicial demand, the defendant became indebted to the plaintiff for the retroactive increase. Thereafter, on May 25, 1973, plaintiff filed a rule to make the past due alimony and child support executory and to have the court hold the defendant in contempt for failure to pay said amount. After a trial on the rule, judgment was rendered in favor of the plaintiff in the sum of $10,932.43, but the court refused to hold the defendant in contempt of court, said judgment being signed on November 27, 1973. The court also refused to consider the defendant's plea of compensation on the ground that it should be disposed of in a partition of the community property, and on this issue the defendant appealed in Suit No. 9820, 311 So.2d 276.
On November 20, 1973, the plaintiff filed a second rule to have the defendant adjudged in contempt and to have past due alimony pendente lite and child support made executory. The defendant again pleaded compensation without success and the court finally rendered a judgment which was signed on February 5, 1974, in favor of plaintiff in the amount of $17,532.43, representing back alimony and child support for the period of May 15, 1972, through and including the period of November 15, 1973, together with interest on the sum of $10,932.43 at the rate of 7 percent per annum from May 30, 1973, until paid and with interest on the sum of $6,600 at the rate of 7 percent per annum from November 15, 1973, until paid and for all costs. The court further held the defendant in contempt of court for his failure to pay alimony and child support to his wife in the above amount from the date of judicial demand through and inclusive to the date of November 15, 1973. However, the defendant was given sixty days to make payment of said amounts to the plaintiff in order to purge himself of the contempt. From the money portion of the judgment of February 5, 1974, defendant has appealed in Suit No. 9898, 311 So.2d 277.
The defendant's plea of compensation is based on the allegation that the plaintiff had in her possession large sums of cash belonging to the community of acquets and gains which she was free to use as she saw fit. Plaintiff denied that she had such funds. At the hearing on the first rule the defendant proved that just shortly before the separation the plaintiff had in her possession the following sums of cash which she obtained from the indicated sources:
(a) The sum of $7,175.48 cash which was withdrawn from the Fidelity National Bank on March 22, 1972.
(b) The sum of $5,113.58, withdrawn from the Louisiana National Bank by cashier's check dated March 22, 1972.
(c) The sum of $3,410 cash, received from Merrill, Lynch, Pierce, Fenner and Smith, Inc., from the sale of stock on March 22, 1972.
At the hearing on the second rule, defendant also sought credit for $1,000 which plaintiff received from Bankamericard on May 17, 1972, just two days after suit was filed. The above sums added to this $1,000 total $16,699.06. The method by which plaintiff came into possession of the cash from the bank was to withdraw the sum from the bank in cash and then obtain a *273 cashier's check with such cash. In other words, she did not use checks to withdraw these funds which were on deposit with the bank but withdrew all of the monies in each account in cash and then purchased cashier's checks.
That the plaintiff had these funds in her possession to do with as she saw fit is beyond question. After showing that plaintiff obtained these funds without her husband's knowledge, defendant's counsel then sought to have plaintiff account for them. Plaintiff's testimony in this regard proved to be entirely false, as she first testified that she paid her former lawyer $9,000 of said funds for services previously rendered and gave approximately $3,500 to her friend to invest in an art gallery in Europe. Proof was later adduced to show that the fee paid the lawyer was only $700, and there was no testimony to corroborate the purported investment she made with her friend. The truth concerning the disposition of the funds which she purportedly paid to her former lawyer was not easy to determine. At the first deposition, both plaintiff and her then counsel repeatedly threatened her former lawyer with legal action for breach of the attorney-client relationship, and it was finally necessary to obtain an order from the court directing the lawyer to testify as to all of the details regarding her deposit of the aforesaid funds with him. Proof was finally adduced at his deposition that the sum of $12,521.21 was actually deposited with said lawyer, of which amount $700 represented his fee. Elsewhere plaintiff testified that she opened a bank box in the name of Mrs. Matile Watts and deposited therein some of the funds which she received from the sale of the stock. Since the plaintiff was obtaining the funds without her husband's knowledge and depositing them in the names of others, we conclude that she did so to hide them from her husband.
We find the defendant has proved that substantially all of the funds taken by plaintiff shortly before their separation were still in her possession after their separation. Plaintiff has failed to provide any satisfactory explanation regarding their disposition. Accordingly, we find that she had in her possession after the separation funds totaling $16,699.06 to use for her own purposes in any manner that she chose.
Having satisfied ourselves as to the amount of funds in plaintiff's possession, we address ourselves to plaintiff's principal contention that such funds were her separate property. The evidence submitted on this issue was not considered by the trial judge, and his failure to do so is assigned as error by the defendant. Our review of the evidence convinces us that plaintiff has not borne the burden of proof necessary to sustain her contention that the funds were her separate property.
We first consider the law applicable to this issue. Under the provisions of LSA-C.C. Art. 2405 the funds which plaintiff claims as her separate and paraphernal property are presumed to be community property. That article states:
"At the time of the dissolution of the marriage, all effects which both husband and wife reciprocally possess, are presumed common effects or gains, unless it be satisfactorily proved which of such effects they brought in marriage, or which have been given them separately, or which they have respectively inherited."
Cited to us is the case of Succession of Hollier, 158 So.2d 351 (La.App.3rd Cir. 1963); writ granted, 245 La. 648, 160 So.2d 231 (1964); remanded on other grounds, 247 La. 384, 171 So.2d 656 (1965), which describes the extent of that burden as follows:
"Under the provisions of the LSA-Civil Code, and particularly Articles 2334, 2402 and 2405, there exists a presumption, juris et de jure, that all property acquired during the existence of the community of acquets and gains in the name of either spouse, whether corporeal or incorporeal, movable or immovable, is an asset of the community. Ford v. Ford, 1 La. 201; J. H. Pearson & Co. v. *274 Ricker & Pearson, 15 La.Ann. 119; Schwab v. Hava, 154 La. 922, 98 So. 420; Busby v. Busby, 168 La. 510, 122 So. 599; Succession of Howell, 177 La. 276, 148 So. 48; Montgomery v. Bouanchaud, 179 La. 312, 154 So. 8. When it is contended that property so acquired is the separate and paraphernal property of one of the spouses, the burden of overcoming the presumption that such property is an asset of the community rests upon the party alleging its separate and paraphernal character. Bass v. Larche, 7 La.Ann. 104; Gogreve v. Dehon, 41 La.Ann. 244, 6 So. 31; Coney v. Coney, 220 La. 473, 56 So.2d 841; Succession of Hemenway, 228 La. 572, 83 So.2d 377; Lotz v. Citizens Bank & Trust Co., La.App. 1 Cir., 17 So.2d 463; Succession of Tullier, La.App. 1 Cir., 53 So.2d 455; Succession of Viola, La.App. 4 Cir., 138 So.2d 613. This burden is satisfied only when it is proved that the property was acquired and paid for with separate and paraphernal funds, and that proof must be strict, clear, positive and legally certain. Prince v. Hopson, 230 La. 575, 89 So.2d 128; Southwest Natural Production Company v. Anderson, 239 La. 490, 118 So.2d 897; Monk v. Monk, 243 La. 429, 144 So.2d 384; Magnolia Petroleum Co. v. Crigler, La.App. 2 Cir., 12 So.2d 511 (Cert. denied); Lotz v. Citizens Bank & Trust Co., supra." (Succession of Hollier, 158 So.2d at 355Emphasis supplied)
There is no such positive proof in the record of the instant case. Upon her own admission, plaintiff had no separate property at the time the community was established. Her only claim concerning the paraphernality of these funds was that the defendant had promised her $300 per month for her own purposes, without the necessity of accounting to him in any way as to what she did with the money. Even though the defendant admitted the money could be spent as the plaintiff chose, he denied that it was a gift, saying it was no more than money for which she did not have to account. A strict accounting was required of other monies deposited to her account to operate the household. Furthermore, there is no proof by her that such sums equal the amounts which she claimed as separate property. Considering the manner in which she obtained and secreted such funds by depositing them in the accounts of others and the fact that her testimony as to their paraphernality stands without corroboration, we are obliged to hold that the funds in her possession after the separation were not manually donated to her during the marriage, were not her separate funds and, under the circumstances, are presumed to be community property.
The defendant assigns as error and claims compensation for the entire amount of the funds held in her possession. Since the funds were community, he has a right to compensation as to half of such funds but no more.
The case of Cumpton v. Cumpton, 283 So.2d 846 (La.App.2nd Cir. 1973), is almost identical factually to the instant case and disposes of this issue:
"The evidence supports defendant's contention that plaintiff withdrew $1,800 from a joint bank savings account belonging to the community just prior to filing her suit for separation. This sum of money has been available to plaintiff to use as she saw fit without restriction and therefore there is no error in the ruling of the trial judge allowing defendant credit for half of this sum in computing alimony payments. Duncan v. Roane, 127 So.2d 191 (La.App. 3d Cir. 1961). The same ruling should apply to the other sum of $394 withdrawn by plaintiff from a checking account in her name, provided the funds in this account were community in nature. Plaintiff contends the funds in this account were her separate property as this account consisted of monies donated to her by defendant. The evidence does not support this conclusion. Defendant testified he gave plaintiff certain sums on a regular basis to purchase personal items and provide for household expenses. This is not refuted. We therefore conclude, as *275 did the trial judge, there was no intent by the husband to make a manual donation to the separate estate of the wife of these funds."
(Cumpton v. Cumpton, 283 So.2d at 848)
The foregoing considered, we find that in Appeal No. 9820 the defendant is entitled to credit for one-half of $15,699.06, or the sum of $7,849.53, against the amount of the judgment rendered against him on the first rule, said judgment being dated November 27, 1973. In Appeal No. 9898, 311 So.2d 277 defendant is also entitled to credit for one-half of $1,000, or the sum of $500, which he proved to be in plaintiff's possession, on the second judgment dated February 5, 1974. In this connection, we note that the first judgment ordered him to pay the sum of $10,932.43 and the second judgment ordered him to pay the sum of $17,532.43. Referring to the minute entry in the record, it can readily be ascertained that the second judgment included that amount which the defendant had been previously condemned to pay in the first judgment.
Therefore, in Appeal No. 9820, 311 So.2d 276 we affirm the judgment rendered on November 27, 1973, as amended to reflect a credit of $7,849.53 as set forth hereinabove. In Appeal No. 9898, 311 So.2d 277 we also affirm the judgment of February 5, 1974, as hereinabove amended to reflect a $500 credit, and additionally amend said judgment by ordering another credit to said second judgment in the amount of the first judgment, together with all interest due thereon. Concerning the last amendment of said judgment, such relief was neither sought nor prayed for, but it is ordered by us under the authority of LSA-C.C.P. Art. 2164 which gives this Court the authority to "render any judgment which is just, legal, and proper upon the record on appeal."
Finally, we reach the issue presented by the writs of certiorari, prohibition and mandamus filed by the defendant, being No. 9836 on the docket of this Court.
The judgment of February 5, 1974, held the defendant in contempt for not paying past due alimony pendente lite which the court found had increased at that time to the sum of $17,532.43. The judgment also gave the defendant sixty days in which to purge himself of said contempt. As noted above, defendant appealed suspensively from the money portion of the judgment. Inasmuch as there is no appeal from the judgment holding the defendant in contempt, he made application by writ to the supervisory jurisdiction of this Court for a review of the same. We granted the writ in order that we might consider the matter along with the several appeals taken by the defendant.
The writ again puts at issue the court's failure to consider the defendant's plea of compensation and the nature of the funds held by plaintiff in her possession after the separation, both of which have been disposed of in the foregoing appeals. Also reargued is the defendant's lack of funds from which to pay such a judgment. In this connection, defendant's counsel again points out that the defendant's bank has refused to lend him any more funds and that the only source of funds available to him is from the sale of his undivided interest in certain separate properties which are heavily mortgaged to the bank and would be sacrificed if he were compelled to sell them at a forced sale in order to comply with the court's judgment. In Appeal No. 9707 we pointed out that the argument was unimpressive as to the defendant's ability to pay alimony to his wife, considering all of the financial crises that the defendant had successfully met, after which he was still worth a million dollars. The record in Appeal No. 9898 proves the validity of our opinion based on the record in No. 9707.
That defendant has been less than candid in divulging his true financial worth and has minimized the same is shown by the following evidence. On December 4, 1973, by act of sale with mortgage the defendant sold to Gilmar Marine Services, Inc., certain separate property owned by *276 him for the sum of $215,000, of which $64,000 was paid in cash. For the balance of $151,000, he received a note from the purchaser stipulating to bear interest at the rate of 12 percent per annum and payable in monthly installments of $2,952.88. On financial statements prepared by defendant this property was valued by him on a cost basis at $41,999 and on an estimated value basis of $90,500. Thus, it is evident that said property was under-valued by the sum of $124,500. It was further shown that in May of 1972, or at about the time this suit was instituted, his personal indebtedness to the Fidelity National Bank of Baton Rouge amounted to $410,460.20, while his contingent liability on the indebtedness of Two Twenty-Eight Terminal Services, Inc., amounted to $173,085.54, making a total of both direct and contingent liabilities of $583,545.74. Furthermore, at the time this rule was tried it was shown that his personal indebtedness to the bank amounted to $266,731.04 and his contingent liabilities on the Two Twenty-Eight Terminal debt amounted to $45,287.14, for a total indebtedness of $312,018.18. Thus, during the period when defendant was required by an order of the court to pay the sum of $1,500 per month, he had reduced his indebtedness to the bank, in addition to the interest which he had paid thereon, by the sum of $271,527.56. On May 7, 1973, for the purpose of giving the bank additional security, he executed a note in the sum of $436,000. This was in addition to a note which he had executed to the bank on May 27, 1972, for $100,000 just shortly after suit was filed. The conclusion to be drawn from this evidence is that defendant has not fairly stated his true worth, that his loans at the bank are overcollateralized, and that the funds from the sale of his separate property were available for the payment of alimony.
Defendant argues that he can only pay alimony from the sale of his separate properties and that the Court should not require him to sell these properties at a forced sale. Yet, when he sold property on December 4, 1973, to Gilmar Marine he received a cash down payment of $64,000 and paid his wife nothing. Obviously, the defendant did not intend to pay his wife anything until his entire indebtedness to the bank was satisfied. Regarding his lack of cash funds to pay alimony, we note that the promissory note he received from said sale is payable in monthly installments of $2,952.88 per month, and further evidence shows that the oil royalties which he received amount to as much as $8,000 per month. Prior to his separation, and at a time when his indebtedness to the bank was far greater, the bank deposited half of these pledged oil royalties to the household account of defendant's wife.
We find that defendant has not made a good faith effort to comply with the court's order. Accordingly, our writ issued herein in Appeal No. 9836, 311 So.2d 277 is recalled, vacated and set aside and the judgment of the trial court holding defendant in contempt of court is hereby made peremptory.
For the above and foregoing reasons, in Appeal No. 9707 the judgment of the trial court is affirmed, at the cost of defendant-appellant.
Affirmed.
NOTES
[1] The judgment provided, in part, for the defendant to pay the following amounts:

"(a) To pay the $200.00 monthly installment on the note secured by mortgage on the residence occupied by plaintiff and located at 855 Seyburn Court, Baton Rouge, Louisiana,
"(b) To pay the monthly utility bills for electricity, water and gas for said residence,
"(c) To pay plaintiff $400.00 each month, in payments of $200.00 on the first and fifteenth of each month, commencing July 1, 1972." (Record, No. 9707, p. 34)
[2] Article 148 of the Louisiana Civil Code states:

"If the wife has not a sufficient income for her maintenance pending the suit for separation from bed and board or for divorce, the judge shall allow her, whether she appears as plaintiff or defendant, a sum for her support, proportioned to her needs and to the means of her husband. (As amended Acts 1928, No. 130.)"