358 So.2d 295 (1978)
CORPUS CHRISTI PARISH CREDIT UNION
v.
Mrs. Selina K. MARTIN and Lawrence Joseph Martin, Jr. (and) Dominic Martin.
No. 61739.
Supreme Court of Louisiana.
April 10, 1978.
Rehearing Denied May 19, 1978.
*296 Barbara Hausman Smith and Cynthia H. Samuel, New Orleans, for defendants-appellees.
Dorothy F. Waldrup, New Orleans, for Selina K. Martin.
William J. Guste, Jr., Atty. Gen., Donald Ensenat, Asst. Atty. Gen., Ronald C. Davis, Staff Atty., Louisiana Dept. of Justice, New Orleans, for intervenors-appellants.
Helen S. Kohlman, Gerard A. Rault, Jr., Janet Mary Riley, New Orleans, for amicus curiae, The League of Women Voters of Louisiana.
DIXON, Justice.
Corpus Christi Parish Credit Union filed a petition for executory process against Mrs. Selina K. Martin (the divorced wife of Lawrence Joseph Martin, Jr.), Lawrence Joseph Martin, Jr. and Dominic Martin alleging default on a $5000 note secured by the pledge of a collateral mortgage in the amount of $8000. The collateral mortgage was on the home of Lawrence and Selina Martin, purchased by them January 25, 1972, during the existence of the marriage. The mortgage and mortgage note were signed by Lawrence J. Martin, Jr. alone.
Selina Martin then filed a petition for injunction, alleging that the signature of her husband Lawrence J. Martin, Jr. was insufficient to mortgage the community property, and that Lawrence Martin had not obtained her consent to the mortgage, and that the credit union knew of the strong objection of Mrs. Martin to the execution of the act of mortgage. Mrs. Martin alleged that to permit the husband to bind the community without the wife's permission was a denial of her rights guaranteed by the Fourteenth Amendment of the United States Constitution.
Selina Martin further filed an exception of no cause of action, and an answer to an amended petition converting the proceedings to a foreclosure via ordinaria in which she reiterated her claim of invalidity of the mortgage and nonliability of the wife on a note not signed by her. The Attorney General intervened under Code of Civil Procedure articles 1880 and 1091 to sustain the constitutionality of Civil Code articles 2334 and 2404.[1]
After a trial at which evidence was adduced, the district judge granted the credit *297 union a judgment against Lawrence Joseph Martin, Jr., restricted the effect of the mortgage to his interest, only, in the property, declared C.C. article 2404 unconstitutional, and granted Selina K. Martin's prayer declaring her interest in the mortgaged property free and clear of the encumbrance, and dismissing the credit union's action against her.
Because of the judgment declaring the statute unconstitutional, the Attorney General and the credit union appealed to the Louisiana Supreme Court. Art. 5, § 5(D), La.Const.1974. Selina Martin also appeals from that part of the judgment subjecting the property to the mortgage to any extent, whatsoever.
At the trial it was established that Mr. and Mrs. Martin were living together at the time of the mortgage in 1974, having been married for about four years. The mortgage was for the purpose of obtaining money to satisfy an indebtedness on Mr. Martin's mother's property. Selina Martin objected to borrowing the money and to mortgaging the property, which had been purchased about two and one-half years before. The transaction caused the break-up of the Martins' marriage, and they were divorced about two years after the execution of the mortgage.
Mrs. Martin was the only one working at the time of the mortgage. She telephoned people at the credit union, told them of the Martin's financial situation, and objected to the mortgage, by telephone and in person. She was told that there was nothing she could do about it.
Before this court the wife attacks the constitutionality of article 2404 of the Civil Code, which places the power of alienation of community property in the husband, who is permitted to alienate community property "by an onerous title without the consent and permission of his wife." It is contended that the managerial system established by the Civil Code for community property in Louisiana effects a discriminatory classification based on gender, violative of the *298 equal protection clause of the Fourteenth Amendment of the United States Constitution, as interpreted in Reed v. Reed, 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971); Frontiero v. Richardson, 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973); Weinberger v. Wiesenfeld, 420 U.S. 636, 95 S.Ct. 1225, 43 L.Ed.2d 514 (1975); Califano v. Goldfarb, 430 U.S. 199, 97 S.Ct. 1021, 51 L.Ed.2d 270 (1977).
The pleadings and the testimony in this case show that the only question placed at issue is whether a mortgage executed in 1974, encumbering immovables belonging to the community, is valid when signed by the husband alone.
That question could have been decided by the district judge without determining the constitutionality of the managerial system of community properly in Louisiana. Selina Martin does not complain that she has been prevented from mortgaging community property. Her only complaint is that she was unable to prevent her husband's mortgaging that property.
It would hardly be possible to examine the constitutionality of article 2404 of the Civil Code and the managerial system of the community property established in Louisiana, without a complete examination of the constitutionality of the community property system. Whatever Selina Martin has placed before the court for adjudication is here only because she could not prevent the mortgage of the family home.
Louisiana statutes provide a simple method for the wife to prevent the alienation of the family home. At the time of the execution of this mortgage, R.S. 9:2802 (whose source was Act 35 of the Extra Session of 1921) provided that the wife, when the husband had failed to file such a declaration within six months after the acquisition of a home, can file in the conveyance records a designation of the family home, and "it may not thereafter be validly sold or mortgaged during the marriage by the husband except with the consent of his wife expressly set forth in the act, and signed by her. . ." R.S. 9:2801. Therefore, in the weeks preceding the execution of the mortgage which plaintiff seeks to foreclose, Selina Martin could have accomplished her purpose. Her husband could not have mortgaged the home without her consent.
Mrs. Martin denies that the existence of a method (which she said was not known to her) to prevent her husband's unilateral action in mortgaging the family home answers the constitutional question, because the statute discriminates against the woman in requiring her to take this affirmative step to prevent the alienation of community property.
It is essential to any system of private ownership of property that someone have the power of alienation. There would seem to be no constitutional impediment to placing the power of alienation of community property equally in husband and wife, without the power of the nonsigning partner to prevent the alienation. The Louisiana community property system placed the power of alienation in the husband. (He can, however, authorize the wife to act as mandatary for the husband or for the community, in which case she would have the power to alienate community property. C.C. 1787). If we should find that managerial system unconstitutional, one possible effect would be to hold that each spouse has the power of alienation. (We would hardly hold that neither could alienate, but might hold that both must join in the act to be effective). Such a holding on the question raised by Mrs. Martin would not invalidate the mortgage, executed by only one spouse.
Since the statutes have provided a simple and efficient method for Selina Martin to prevent her husband's mortgaging the family home, and since a determination of the constitutionality of the Louisiana community property system concerns the basis of property ownership and real rights in Louisiana, this court should avoid deciding the case on a constitutional basis unless a decision on the constitutional question is essential to a decision of the issues.
In her appeal, Selina Martin argues that that part of the district court's judgment recognizing the mortgage only to the extent of the husband's interest in the property is *299 incorrect, and no part of the property should be encumbered because the mortgage was invalid, having been executed by the husband alone. Since the mortgage was valid, the wife's arguments fall.
The judgment of the district court is therefore reversed insofar as it recognized the mortgage as affecting only the interest of Lawrence Joseph Martin, Jr. in the property, and insofar as it declared Mrs. Selina K. Martin's interest free and clear of the encumbrance, and insofar as it declared C.C. 2404 unconstitutional; that part of the judgment against Lawrence Joseph Martin, Jr. is affirmed; since the district court did not refer to the demands against Dominic Martin, the case is remanded to the district court where the judgment will be recast as appropriate and as consistent with the views expressed in this opinion, at defendants' cost.
TATE, CALOGERO and DENNIS, JJ., dissent and assign written reasons.
TATE, CALOGERO and DENNIS, Justices (dissenting).
The majority opinion avoids ruling upon the issue of unconstitutionality. It states that the only issue before us is whether the wife could prevent the husband from mortgaging the family home, which had been acquired through community earnings (primarily, the wife's). Since the wife had a statutory remedy to veto the husband's exercise of his power to mortgage the community's home, the majority finds no necessity to pass upon the constitutionality of the statutes attacked.
With great deference for the majority's view, we respectfully suggest that this oversimplification of the issue erroneously fails to meet the issue of gender-based discrimination squarely posed to us by the wife's pleadings and evidence:
When community property is in the name of both husband and wife, is a statute unconstitutional which permits the husband alone to mortgage it? If so, is that statute saved from unconstitutionality by a provision which requires the wife (and not the husband) to record a document which, if recorded, will require her consent to the husband's exercise of the power to sell or mortgage granted by the statute to the husband alone? The second issue (which the majority relies upon as permitting it to evade meeting the constitutional question) is inextricably connected with the first and, further, it obviously raises an independent issue of unconstitutional gender-based discrimination.
It is unfortunate that the majority did not reach the issue of unconstitutionality so clearly posed. For reasons to be noted, the statutes are obviously unconstitutional. The legislature, which is in the process of revising the community property system, should have had the benefit of the views of this court as to the constitutional questions at issue.
We can only surmise that, in view of this probability of legislative attention to the problem, the majority wished to avoid the disruption in dealing with community-held property which might result from a present judicial declaration of the obvious unconstitutionality of the present provisions.
As we will show, the disruptive effects might be avoided by a prospective declaration of unconstitutionality, as the Attorney General suggests.
By avoiding the justiciable issue presented by Selina Martin's claim, the majority is clearly in error in refusing to adjudicate her squarely-posed issue of unconstitutionality. Additionally, however, it invites continuing litigation of the present community property law's provisions for husband (alone)administration of the community's assets, during the interval until finally the legislative reform takes place at some time in the future, which will affect future transactions only. The constitutional problem will not go away by ignoring it.
Before stating the actual legal issue more precisely, we think it may be appropriate to note that the facts and pleadings do not question the constitutionality in general of Louisiana's community property system.
*300 By this system, during the existence of the marriage the acquisitions and the products of the labor of either spouse fall into the community assets acquired by the marital partnership; at the dissolution of the community, both spouses share equally in the effects of the community. La.Civ.C. arts. 2399 et seq. We have recently again recognized this beneficent scheme of regulation of income or property during a marriage, designed to enhance family stability and to recognize the contributions of a non-working spouse to the family and the marriage. T. L. James & Co. v. Montgomery, 332 So.2d 834 (La.1976). No one here questions the constitutionality of the community property concept, nor its fairness and the social soundness of its provisions that both spouses should share in the acquisitions of either during the community.
Implicit in the narrow issue before us (to be stated below) is the general scheme of the administration by the husband alone, during the marriage, of the jointly acquired assets of the community. Supposedly based upon maintaining peace in the family or upon the husband's superior economic ability, the facts in the instant case demonstrate facts contrary to these suppositionshere, the wife is the breadwinner, whose earnings primarily supported the family and the acquisition of the family home; the marriage broke up, because the husband exercised his administrative power contrary to the wishes of the wife and mortgaged the community family home (mostly acquired through her earnings) in order to pay his mother's debt.
However, the narrow issue before us does not even, under the present facts, require us to pass on the general validity of the administrative scheme, by which generally the husband administers the effects of the community. La.Civ.C. art. 2404.[1]
The Issue
The narrow issue posed by the actual facts of this case concerns the validity of the provision of Civil Code Article 2334, to the effect that, when title to immovable property stands in both spouses, the husband alone may mortgage or sell it, unless the wife first files a declaration in the public records that her consent is required.[2]
*301 Thus, even though the property is in the name of both husband and spouse, (1) the husband alone may mortgage or sell it, (2) unless the wife files a declaration that her consent is required. The code article does not afford the wife any right whatsoever to sell or mortgage the property, which is jointly in her name as well as the husband's.
The article does not contemplate, for instance, that the husband could file a declaration consenting that the wife sell or mortgage the community property, which after all was acquired for both members of the community and has its title registered expressly in the names of both spouses. Thus, the article apparently does not permit the wife instead of the husband to sell or mortgage the jointly-owned and jointly-registered property, even if the husband wants to consent to her administration of it in these regards. See La.Civ.C. art. 2404.
The wife contends that such discrimination in favor of the husband, solely on account of his sex, is unreasonable and arbitrary and denies her the equal protection of the laws, guaranteed to all persons under American law by the Fourteenth Amendment to the United States Constitution.
The appellants contend, on the other hand, that equal protection is not denied. They rely upon the principle that differences in legislative treatment may validly be accorded to persons or interests classified differently, provided there be shown a rational basis for the differentiation which is reasonably related to a legitimate governmental purpose. The appellants suggest that the regulation of property rights between husband and wife is a matter within a state's interest and concern, and that the community property system as a whole was adopted within valid state power as a reasonable regulation to protect and strengthen family life and to regulate the disposition of property acquired by a married couple. See Kirschberg v. Feenstra, 430 F.Supp. 642 (E.D.La., 1977).
Unconstitutionality
In our opinion, the trial court correctly held that no reasonable basis is shown for the regulation, by which all husbands are given power to sell or mortgage jointly-titled immovable property of the community, without regard o the respective abilities or contributions of the husband and wife, and by which no wife can be entrusted with this power.
Nor do we find the unconstitutional arbitrariness of this classification eliminated by the provision that the wife's consent to the husband's sale or mortgage will be required if she files a declaration to such effect. For wives who obtain legal advice and so act, such a declaration can restrain the husband's exercise of his power to sell or mortgage, statutorily given to him alone. However, this potential power of the wife merely to veto the husband's acts does not alter the basic arbitrariness of the classification, by which the husband alone is recognized as having the power to sell or mortgage jointly-titled property, and by which, even if the husband were to consent, his wife can never have the power to sell or mortgage immovable property in her capacity as a spouse of the community, even though she stands recorded as a co-owner of the property.
Legislative classifications based on gender are invidious when they differentiate without sufficient justification solely on the basis of sex. Califano v. Goldfarb, 430 U.S. 199, 97 S.Ct. 1021, 51 L.Ed.2d 270 (1977). "To withstand constitutional challenge . . classifications by gender must serve important governmental objectives and must be substantially related to achievement of those objectives." Craig v. Boren, 429 U.S. 190, 197, 97 S.Ct. 451, 457, 50 L.Ed.2d 397 (1976). See also Weinberger v. Wiesenfeld, 420 U.S. 636, 95 S.Ct. 1225, 43 L.Ed.2d 514 (1975) and Frontiero v. Richardson, 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973). See also: Comment, Gender-Based Discrimination *302 and a Developing Standard of Equal Protection Analysis, 46 Univ. Cincinnati L.Rev. 572 (1977).
Tested by these principles, we can find no rational justification in the regulation of property rights between the husband and the wife, nor in assuring the stability of the family, by the provision that the husband alone may mortgage or sell property acquired during the community through the efforts and earnings of either spouse (in this case, for example, primarily through the efforts and earnings of the wife), even though title to the property stands in the name of the wife as well as of the husband.
Gender-based discrimination cannot be justified solely because of some assumption that all or most male spouses are better administrators or possess non-substantiated particular attributes or that female spouses are usually dependent upon their husbands, Califano v. Goldfarb, 430 U.S. 199, 97 S.Ct. 1021, 51 L.Ed.2d 270 (1977); Craig v. Boren, 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976); Stanton v. Stanton, 421 U.S. 7, 95 S.Ct. 1373, 43 L.Ed.2d 688 (1975); Reed v. Reed, 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971), nor because of some assumption (unfounded in the present day, however justified in the past) that all or most female spouses are housewives less fitted by occupation or interests than males to perform general economic functions, Taylor v. Louisiana, 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975).[3] Discrimination between persons solely on the basis of such assumptions is regarded as unreasonable and invidious by the federal constitution, as interpreted by the decisions cited.
We therefore believe to be unconstitutional those provisions of Civil Code Articles 2334 and 2404 which provide that the husband alone may mortgage and sell community immovable property which has been acquired in the name of both husband and wife.
Retroactivity of Declaration of Unconstitutionality
This declaration of unconstitutionality need not be retroactive in application, however. See Bilbe, Constitutionality of Sex-Based Differentiations in the Louisiana Community Property Regime, 19 Loyola L.J. 373, 396-97 (1973). Accepted and traditional principles of judicial invalidation of legislative enactment or previous judicial interpretation permit the present judicial invalidation to apply prospectively only as to transactions or acts occurring subsequent to the decision or to a date fixed by the court.
See: Daniel v. Louisiana, 420 U.S. 31, 95 S.Ct. 704, 42 L.Ed.2d 790 (1975); Cipriano v. City of Houma, 395 U.S. 701, 89 S.Ct. 1897, 23 L.Ed.2d 647 (1969); Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965); Chicot County Drainage Dist. v. Baxter State Bank, 308 U.S. 371, 60 S.Ct. 317, 84 L.Ed. 329 (1940); Great Northern Railway v. Sunburst Oil & Refining Co., 287 U.S. 358, 53 S.Ct. 145, 77 L.Ed. 360 (1932); Gelpcke v. City of Dubuque, 1 Wall. 175, 17 L.Ed. 520 (1863); Lake, Inc. v. Louisiana Power & Light Co., Inc., 330 So.2d 914 (La.1976); State v. Ray, 259 La. 105, 249 So.2d 540 (1971); Succession of Lambert, 210 La. 636, 28 So.2d 1 (1946); Comment, Retrospective Effect of an Overruling Decision, 7 La.L.Rev. 133 (1946); Traynor, Quo Vadis, Prospective Overruling: A Question of Judicial Responsibility, 28 Hast.L.J., 533 (1977); Schaefer, The Control of "Sunbursts": The Techniques of Prospective Overruling, 42 NYU L.Rev. 631 (1967); Currier, Time and Change in Judge-Made Law: Prospective Overruling, 51 Va.L.Rev. 201 (1965).
The reason generally asserted for the prospective application of a judicial declaration of invalidity of statute or former rule is to avoid unreasonable prejudice to those who have acted in reliance upon the provision or *303 ruling now invalidated. See: Succession of Lambert, 210 La. 636, 28 So.2d 1 (1946); Cipriano v. City of Houma, 395 U.S. 701, 89 S.Ct. 1897, 23 L.Ed.2d 647 (1969); Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967); Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965).
Nevertheless, the preferable view is that, in the case before the court, the declaration of invalidity should be applied, lest the judicial declaration be considered merely as dicta. State v. Lovett, 345 So.2d 1139 (La. 1977); Comment, Retrospective Effect of an Overruling Decision, 7 La.L.Rev. 133, 136 (1946); Schaefer, The Control of "Sunbursts": The Techniques of Prospective Overruling, 42 NYU L.Rev. 631, 638-39 (1967). For this reason, and because of certain equities peculiar to the instant case,[4] we would affirm the district court's ruling in the case before us that the execution of the mortgage by the husband did not affect the wife's interest in the immovable property to which title stood in her name as well as the husband's; but we would specifically hold that our declaration that La.C.Civ. arts. 2334 (1962) and 2404 are unconstitutional in this respect shall not affect any other transactions or acts accomplished prior to the date set forth below.
The preferable approach would be to delay our judicial declaration of the article's invalidity, save for the present case, for a sufficient time to allow the legislature to address itself to the matter. This procedure has been followed in several other jurisdictions. See: Evans v. Bd. of County Commr's of County of El Paso, 174 Colo. 97, 482 P.2d 968 (1971); Smith v. State, 93 Idaho 795, 473 P.2d 937 (1970); Spanel v. Mounds View School District No. 621, 264 Minn. 279, 118 N.W.2d 795 (1962). See also, Note, Prospective-Prospective Overruling, 51 Minn.L.Rev. 79 (1966) for a full discussion of this practice.
Since the legislature will soon convene for its 1978 annual session, our declaration of unconstitutionality would not take effect until the effective date provided by any laws enacted by this session, see La.Const. of 1974, Article 3, Section 19 (which provides that the legislature may specify a later effective date), which regulate the administration, sale, mortgage, or other transaction by the spouses with regard to property acquired by the community.
If the legislature during the session fails to enact legislation purporting to end the unconstitutionality of Articles 2334[5] and 2404 in the respects mentioned, then as of the sixtieth day after final adjournment of this session, see La.Const. of 1974, Article 3, Section 19, we would hold Civil Code Articles 2334 and 2404 are invalidated as unconstitutional, *304 insofar as permitting the husband alone to sell, mortgage, or lease community immovable property of which the title is in the name of both spouses. After such date, sales, leases, or mortgages of community immovable property which stand in the name of both husband and wife (whenever acquired) would require the assent of both spouses, either specially or else by a general or special mandate made by either spouse in favor of the other, authorizing the latter spouse to sell, transfer, or lease as the agent of the community.
To repeat, however, this effect of our declaration of unconstitutionality would take place only if the legislature failed, within the annual session of 1978, to enact other regulation concerning sale, lease, or mortgage of community immovable property which stands in the name of both spouses.
Conclusion
We make no suggestion that the above effect of a declaration of unconstitutionality as to jointly-titled community property is the only one possible constitutionally. For instance, no gender-based discrimination might result from a provision that community property or earnings in the name of either spouse may be administered (sold, mortgaged, spent) by that spouse alone as good-faith agent of the community; or from any other legislative provision for joint or single administration by the spouses which does not arbitrarily empower the husband or wife alone to serve as administrator of the community assets and earnings acquired for the benefit of both spouses.
For the reasons assigned, we respectfully dissent.
NOTES
[1] "The property of married persons is divided into separate and common property.

Separate property is that which either party brings into the marriage, or acquires during the marriage with separate funds, or by inheritance, or by donation made to him or her particularly.
The earnings of the wife when living separate and apart from her husband although not separated by judgment of court, her earnings when carrying on a business, trade, occupation or industry separate from her husband, actions for damages resulting from offenses and quasi offenses and the property purchased with all funds thus derived, are her separate property. Actions for damages resulting from offenses and quasi offenses suffered by the husband, living separate and apart from his wife, by reason of fault on her part, sufficient for separation or divorce shall be his separate property.
Common property is that which is acquired by the husband and wife during marriage, in any manner different from that above declared. But when the title to community property stands in the name of the wife, it cannot be mortgaged or sold by the husband without her written authority or consent.
Where the title to immovable property stands in the names of both the husband and wife, it may not be leased, mortgaged or sold by the husband without the wife's written authority or consent where she has made a declaration by authentic act that her authority and consent are required for such lease, sale or mortgage and has filed such declaration in the mortgage and conveyance records of the parish in which the property is situated. (As amended Acts 1962, No. 353, § 1.)" C.C. 2334.
In 1976, by Act 679, C.C. 2334 was amended, substituting the following for the last paragraph:
"Where the title to community immovable property declared to be the family home stands in the name of the husband alone it may not be leased, mortgaged or sold without the wife's written authority or consent.
The limitation on the husband described in the two immediately preceding paragraphs shall not apply where the wife has made a declaration by authentic act that her authority or consent are not required for such lease, sale or mortgage and has filed such declaration in the mortgage and conveyance records of the parish in which the property is situated.
The declaration may be general as to all such property or it may specify property to which it shall or shall not apply. If the declaration so provides, it may apply generally to property which may be required in the future, but a contrary declaration or withdrawal of her authority or consent by the wife may be made and recorded."
"The husband is the head and master of the partnership or community of gains; he administers its effects, disposes of the revenues which they produce, and may alienate them by an onerous title, without the consent and permission of his wife.
He can make no conveyance inter vivos, by a gratuitous title, of the immovables of the community, nor of the whole, or of a quota of the movables, unless it be for the establishment of the children of the marriage. A gratuitous title within the contemplation of this article embraces all titles wherein there is no direct, material advantage to the donor.
Nevertheless he may dispose of the movable effects by a gratuitous and particular title, to the benefit of all persons.
But if it should be proved that the husband has sold the common property, or otherwise disposed of the same by fraud, to injure his wife, she may have her action against the heirs of her husband, in support of her claim in one-half of the property, on her satisfactorily proving the fraud. (As amended by Acts 1926, No. 96)." C.C. 2404.
[1] La.Civ.C. art. 2404 provides:

"The husband is the head and master of the partnership or community of gains; he administers its effects, disposes of the revenues which they produce, and may alienate them by an onerous title, without the consent and permission of his wife.
"He can make no conveyance inter vivos, by a gratuitous title, of the immovables of the community, nor of the whole, or of a quota of the movables, unless it be for the establishment of the children of the marriage. A gratuitous title within the contemplation of this article embraces all titles wherein there is no direct, material advantage to the donor.
"Nevertheless he may dispose of the movable effects by a gratuitous and particular title, to the benefit of all persons.
"But if it should be proved that the husband has sold the common property, or otherwise disposed of the same by fraud, to injure his wife, she may have her action against the heirs of her husband, in support of her claim in one-half of the property, on her satisfactorily proving the fraud."
[2] At the time of execution of the mortgage, La.Civ.C. art. 2334, as amended in 1962 (i. e., before its 1977 amendments) provided:

"The property of married persons is divided into separate and common property.
"Separate property is that which either party brings into the marriage, or acquires during the marriage with separate funds, or by inheritance, or by donation made to him or her particularly.
"The earnings of the wife when living separate and apart from her husband although not separated by judgment of court, her earnings when carrying on a business, trade, occupation or industry separate from her husband, actions for damages resulting from offenses and quasi offenses and the property purchased with all funds thus derived, are her separate property.
"Actions for damages resulting from offenses and quasi offenses suffered by the husband, living separate and apart from his wife, by reason of fault on her part, sufficient for separation or divorce shall be his separate property.
"Common property is that which is acquired by the husband and wife during marriage, in any manner different from that above declared. But when the title to community property stands in the name of the wife, it cannot be mortgaged or sold by the husband without her written authority or consent.
"Where the title to immovable property stands in the names of both the husband and wife, it may not be leased, mortgaged or sold by the husband without the wife's written authority or consent where she has made a declaration by authentic act that her authority and consent are required for such lease, sale or mortgage and has filed such declaration in the mortgage and conveyance records of the parish in which the property is situated." (Italics supplied.)
[3] In invalidating Louisiana's statute which effectively excluded women from jury service, the United States Supreme Court in Taylor cited statistics showing that 50% of women between 18 and 64, with or without children, were in the work force, and that 51.2% of such women were in the work force, even though living with husbands also in the work force. 419 U.S. 535, 95 S.Ct. 700.
[4] These equities include: the lender's misrepresentation to the wife, prior to the husband's execution of the mortgage, that she had no legal remedy to prevent him from mortgaging the property (she could have filed a declaration preventing the mortgage without her consent); her repeated protests to the lending agency (which tended to put them on notice that the validity of the mortgage would be attacked); and the circumstance that the lender accepted the mortgage signed by the husband alone on property acquired in the name of both husband and wife (considering that, when property is acquired in the name of the wife, the presumption that it was acquired for the community may subsequently be judicially attacked by the wife, see Betz v. Riviere, 211 La. 465, 29 So.2d 465 (1947); American Surety Co. v. Nobel & Salter, 196 La. 312, 199 So. 131 (1940), and jurisprudence cited in Southwest Natural Production Co. v. Anderson, 239 La. 490, 118 So.2d 896 (1960)). Absent our declaration of unconstitutionality, these circumstances may or may not have been sufficient to invalidate the mortgage, and we express no view as to that issue. They are sufficient reason, however, to apply our declaration of unconstitutionality retrospectively to the present transaction, since under the present facts the lender had reason prior to the transaction to expect that its invalidity might subsequently be urged by the wife.
[5] Even as amended in 1976, this article empowers the husband alone to mortgage or sell community immovable property, even though by the 1976 amendment the article now provides that he may not do so, even as to property in the wife's name (alone or jointly), without her written consent. The article does not, for instance, authorize the wife to act for the community, even with regard to property in her name and even with her husband's consent; the power to do so resides solely in her husband, even though her consent may now be required.