FRED W. JONES, Jr., Judge.
On June 8, 1979 the American Bank and Trust Company of Shreveport filed suit against C. Eugene Farr to recover balances allegedly due on unsecured promissory notes dated January 25,1977; February 17, 1977; July 21, 1977; and August 10, 1977. Farr filed an answer of denial. Alleging that the defendant had left the state permanently, the Bank amended its petition to secure a writ of non-resident attachment, resulting in the seizure by the sheriff of a lot with improvements thereupon in Bossier Parish. The defendant’s wife, Diane Farr, then intervened to dissolve the writ of attachment on the ground that her husband could not alienate nor encumber the family home without the intervenor’s consent, under the provisions of La.Civil Code Art. 2334 and La.R.S. 9:2801. In the alternative, and in the event the court ruled that the cited codal and statutory provisions permitted the contested act, intervenor attacked the laws as unconstitutional under the equal protection clause of the Fourteenth Amendment to the U.S. Constitution.
From a judgment in favor of the plaintiff Bank against Farr for the unpaid balance due on the promissory notes, with the customary clause recognizing and maintaining the attachment, both Farr and his wife appealed, contending that the trial judge erred in: (1) not finding that the writ of attachment was an “encumbrance”; (2) in not finding that Farr had alienated or encumbered the family home contrary to the provisions of La.C.C. Art. 2334 and La.R.S. 9:2801 by failing to secure his wife’s consent; (3) in finding that the code article and statute applied only to “consensual” encumbrances.
We affirm.
The record shows that title to the property involved in this litigation was in the name of both Farr and his wife. However, their deed did not designate the property as the family home.
The primary question posed by this lawsuit is whether a wife can defeat a writ of attachment against the family home on the ground that the community debt out of which the writ arose was incurred in 1977 by the husband alone.
Appellants argue first that the writ of attachment amounted to an “alienation or encumbrance” to which the wife had to consent as mandated by La.C.C. Art. 2334[1] and La.R.S. 9:2801[2], the matrimonial regimes laws allegedly applicable to transactions of this nature in 1977.[3]
Since Farr did not sell or mortgage the family home, Article 2334 is obviously inapplicable.
As clearly stated in its text, La.R.S. 9:2801 becomes operative only when the husband designates “the property as a family home.” This was not done by Farr. Even if the cited statute is relevant, Farr’s act of executing the unsecured promissory notes did not constitute an “encumbrance” of the family home. To encumber property *935 “is to make it subject to a charge or liability.” Black’s Law Dictionary, 4th Ed. (1951), West Publishing Company. The incurring of a community obligation may ultimately, by operation of law, result in a lien being placed against their property. This, however, was obviously not the “encumbrance” contemplated by the statute upon which appellants rely.
A writ of attachment is simply a procedural remedy available to the creditor either as a means of securing jurisdiction over a nonresident or as a device to protect his potential claim against the debtor’s property. To the extent that it operates as an encumbrance against property this lien arises by operation of law and is not one directly granted by the debtor.
In summary, Farr’s act of executing unsecured promissory notes which constituted community obligations in 1977 was not the equivalent of a “sale, mortgage, alienation or encumbrance” of the family home which required the wife’s consent before a writ of attachment could validly issue.
Appellants argue, in the alternative, that Article 2334 and La.R.S. 9:2801 are unconstitutional if construed as permitting the issuance of the attacked writ of attachment, citing the case of Kirchberg v. Feenstra, 609 F.2d 727 (5th Cir. 1979).[4]
In view of our conclusion that the mere incurring of community obligations by Farr, which later resulted in the issuance of a writ of attachment, did not constitute an alienation or encumbrance of the family home, the attacked laws do not govern the disposition of this litigation. Therefore, we do not reach the question of their constitutionality.[5]
For these reasons, we affirm the judgment of the trial court, at appellants’ cost.

. The pertinent portion of this article provides that “where the title to immovable property stands in the names of both the husband and wife, it may not be leased, mortgaged or sold by the husband without the wife’s written authority or consent.”

. § 2801.
Whenever there has been recorded in the conveyance or mortgage records of the parish in which it is located, a description sufficiently definite to identify any parcel of land, together with the authentic declaration of the owner that he is a married man and that he desires to and does designate the property as a family home, it may not thereafter be validly alienated, encumbered or leased during the marriage by the husband alone except when the wife has previously made and recorded a declaration by authentic act that her authority or consent are not required as provided in Article 2334 of the Civil Code.

.Our codal provisions relating to matrimonial regimes have been completely revised, with most of the new provisions becoming effective January 1, 1980. See Act 709 of 1979.

. This case held La.C.C. Art. 2404 unconstitutional because it permitted a husband to mortgage the family home without his wife’s consent. Even if the case was applicable and we were bound by it, the decision specifically provided that it was to operate prospectively only.

. The majority in Corpus Christi Parish Credit Union v. Martin, 358 So.2d 295 (La.1978) declined to rule on the constitutionality of our then managerial system for community property, finding that a wife who attacked the right of her husband to mortgage community property without her consent had adequate remedies for her protection. A vigorous dissent would have ruled Article 2334 violative of the equal protection clause of the 14th Améndment to the U.S. Constitution because the article authorized the husband to perform the contested act. However, that ruling also contemplated prospective application only.